In re Marshall Paul DYER, Paul Dyer, M. Paul Dyer, Debtor.

Marshall Paul DYER, Paul Dyer, M. Paul Dyer, Plaintiff,

v.

UNIVERSITY OF TENNESSEE and Tennessee Student Assistance Corporation, Defendants.

Bankruptcy No. 3–83–01744.

Adv. No. 3–84–0021.

United States Bankruptcy Court, E.D. Tennessee.

June 27, 1984.

Foglesong, Cruze, Dunaway & Shope, Diane B. Montie, Knoxville, Tenn., for plaintiff.

Ronald C. Leadbetter, Knoxville, Tenn., for defendant University of Tennessee.

William M. Leech, Jr., William B. Hubbard, Angela Dianne Stamey, Nashville, Tenn., for defendant Tennessee Student Assistance Corporation.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The Bankruptcy Code, 11 U.S.C.A. § 523(a)(8) (1979), excepts from discharge any debt for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless

> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants
>
> . . . .

11 U.S.C.A. § 523(a)(8)(B) (1979).

At issue in this proceeding is whether excepting from discharge two student loans totaling $14,307.63, one to the University of Tennessee in the amount of $11,-682.63, and one to the Tennessee Student Assistance Corporation in the amount of $2,625.00, will impose an undue hardship on the debtor.

I

The debtor is 34 years of age, single, and resides at home with his mother and sister. It took him ten years to complete his undergraduate work at the University of Tennessee and five years to obtain a Master's degree in English.

Since 1971 the debtor has suffered from agoraphobia, an anxiety disorder. When he suffers an attack, he becomes convinced that he is dying and attempts to isolate himself in a safe place or, if possible, to return to his home. As a result of his disorder,.he is not able to obtain and retain suitable employment. Due to his lack of income the debtor has no funds for food, clothing, or medicine. His mother and sister furnish these necessities. In addition, his mother and sister pay the rent on the house they jointly occupy.

Currently, the debtor does not have sufficient funds for necessary psychological or psychiatric treatment. His visits to Dr. Rogers, a clinical psychologist, are limited to one a month. He is taking the following medication:

(1) Deserel (an antidepressant) 50 m.g. three times a day, (2) Inderol (for irregular heart beat) 10 m.g. three times· a day and (3) valium (a mild tranquilizer) 5 m.g. three times a day. His medication costs approximately $15.00 to $20.00 per month, an expense also borne by his mother and his sister.

The debtor's mother is 59 years old and earns minimum wage as a cafeteria worker in a bus depot. She suffers some health problems related to her spine and back.

The debtor's sister, a student at the University of Tennessee, is not employed but receives financial assistance enabling her to remain in school.

The debtor's assets total $1,615.00.

During the past three years, the debtor has worked intermittently for the University of Tennessee, earning approximately $6,600.00 as a part-time English instructor. He has not been successful in applying for further employment at the University and believes that his medical problems will preclude the possibility of such employment in the foreseeable future.

The debtor has been treated by various psychologists during the past ten years. Dr. Edwin S. Rogers, a clinical psychologist, has treated the debtor since 1982. Dr. Rogers testified that the debtor suffers from agoraphobia, an anxiety disorder. At times the anxiety causes "panic attacks" to such an extent that he is unable to function. When the debtor suffers an anxiety attack, according to Dr. Rogers, "His heart races. He has the idea in his head and a sensation that his heart is bursting. And he will become obviously very exhaustive or frightened at this point and will immediately try to seek some safe environment, usually his home if he can get there." Tr. p. 7.

An attack interferes with the debtor's normal lifestyle, the extent of interference depending upon the severity of the attack. At times, he is so stricken with anxiety that he is unable to leave his house, or even his bedroom. There are times when he shows improvement but, according to Dr. Rogers, there has not been a great deal of overall improvement. The prognosis for the future is not much better than it has been in the past.

In a letter dated December 21, 1983, Dr. Lane D. Cook, a psychiatrist, stated that the debtor suffers from agoraphobia, with as many as 20 panic attacks a day. According to Dr. Cook, the debtor will continue for an indefinite time to be unable to work on a full-time basis.

II

The Bankruptcy Code does not contain a definition of "undue hardship" or a test for determining its existence. The courts disagree as to whether "undue hardship" means the certainty of hopelessness, total incapacity, virtually nonexistent expectation of repayment, extraordinary or unique circumstances, or some less stringent test. All agree, however, that whether repayment of a student loan would impose an undue hardship on the debtor and his dependants depends on the facts and circumstances of each case. *See* compilation of cases, Current Awareness Alert, Part II §§ 2–3, Bankruptcy Service, Lawyer's Edition (Nov.1983). Further, all agree that medical problems, including emotional illness, are one of the most sig-

nificant factors in determining the dischargeability of a student loan. *See Nichols v. Regents of the University of California,* 15 B.R. 208 (Bankr.D.Me.1981) (excepting educational loan from discharge would impose undue hardship where debtor, though well educated and articulate, was unable to retain suitable employment and would likely function only at subsistence level for remainder of his life due to history of psychiatric disorders and related problems with alcohol); *New York State Higher Education Services v. Barrington,* 7 B.R. 267 (Bankr.W.D.N.Y.1980) (excepting student loan from discharge would work undue hardship where debtor, a third generation depressive, had suffered from depressive illness all her life, had lost job, and been unable to obtain new employment due to depressive condition).

■ The debtor's medical problems in this case clearly support a finding of "undue hardship." It is true the debtor has obtained a Master's degree. However, that degree is of dubious economic value in view of the debtor's anxiety disorder, agoraphobia, and his consequently frequent "panic attacks."

The University asserts that the loans should be excepted from discharge at this time because of the possibility that the debtor at some future time may be able to obtain employment.[1]

The possibility exists, of course, that in the future the debtor may be able to obtain employment but, from the medical testimony introduced and the court's observation during the debtor's testimony, it is reasonably certain that the debtor cannot possibly cope with full-time employment and that any earnings from part-time employment, if he is fortunate enough to obtain such employment, would be sufficient to cover only the necessary living expenses—food, clothing, shelter, and medicine—that his mother is currently providing.

The burden of hopeless indebtedness should be lifted from the debtor's shoulders. That is one of the primary purposes of the bankruptcy statutes.

■ One of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams v. U.S. Fidelity & Guaranty Co.,* 236 U.S. 549, 554, 555, 35 S.Ct. 289, 290, 59 L.Ed. 713. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. [Citations omitted] The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

The loans will be discharged.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

1. During the short period the debtor was employed, arrangements were made with the University for the debtor to pay $150.00 per month on the loans.