**In re David Earl ALBERT, Debtor.**

**David Earl ALBERT, Plaintiff,**

**v.**

**OHIO STUDENT LOAN COMMISSION, Defendant.**

Bankruptcy No. 81–0328.
(Related Case: 80–02141).

United States Bankruptcy Court,
N.D. Ohio, W.D.

Oct. 28, 1982.

Clifford Baker, Toledo, Ohio, for plaintiff.

Timothy J. O'Neill, Columbus, Ohio, for defendant.

MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court upon the Complaint to Determine Dischargeability of Debt filed by Debtor, David Earl Albert.

Pursuant to Bankruptcy Code Section 523(a)(8)(B), the Debtor seeks to discharge his obligation to the Ohio Student Loan Commission because payment would impose an undue hardship upon him. The Defendant, Ohio Student Loan Commission (hereafter OSLC) argues that the facts of this case should preclude a finding of dischargeability because the requisite undue hardship can not be proven.

## FACTS

Upon testimony taken and exhibits offered into evidence at the trial, the Court finds the following facts:

1.) The Debtor executed four student loan notes in the following amounts:

b.) A note dated May 23, 1973 in the amount of Fifteen Hundred and no/100 Dollars ($1,500.00) plus interest. (See Defendant's Trial Exhibit C);

a.) A note dated December 21, 1973 in the amount of One Thousand and no/100 Dollars ($1,000.00) plus interest. (See Defendant's Trial Exhibit B);

c.) A note dated May 25, 1974 in the amount of One Thousand Two Hundred Eighty and no/100 Dollars ($1,280.00) plus interest. (See Defendant's Trial Exhibit D); and,

c.) A note dated February 28, 1977 in the amount of Twenty-five Hundred and no/100 Dollars ($2,500.00) plus interest. (See Defendant's Trial Exhibit A).

The Debtor received from these four notes the total Six Thousand Two Hundred Eighty and no/100 Dollars ($6,280.00).

2.) The date specified for commencement of repayment on each of these loans is different:

a.) The repayment of the loan of May 23, 1973 was not specified within the loan agreement. This time period was left blank.

b.) The repayment of the loan of December 21, 1973 was by the terms of the note to be commenced no earlier than nine (9) months following graduation or when the maker ceased to pursue at least a half-time course of study.

c.) The repayment of the loan of May 25, 1974 was to begin on the first day of the tenth month following graduation or when the maker ceased to pursue at least a half-time course of study.

d.) The repayment of the final note of February 28, 1977, required commencement upon the termination of a grace period of nine (9) months after cessation of full or half-time enrollment.

3.) The Debtor received a Bachelor of Science degree in Pharmacy from the University of Toledo in June, 1973. Upon graduation, the Debtor continued his schooling on a graduate level.

4.) In May, 1977, the Debtor received the degree of Doctor of Podiatry from the Ohio College of Podiatric Medicine.

5.) The past yearly income earned by the Debtor was in the following approximated amounts:

1978—$17,000.00
1979—$14,000.00
1980—$13,103.00
1981—$12,953.14

6.) Because of drug addiction in 1979, the Debtor's pharmacy license was revoked, and his license to practice podiatry was denied. The Debtor testified that he believes that he will not be able to obtain licenses in these two fields in the future because of his past drug addiction. The Debtor presently works for Victor Temporary Services in Toledo, Ohio, as a temporary lab technician and is subject to periodic call when needed. The Debtor is currently placed at Owens-Illinois in the Chemistry lab and receives $8.50 per hour for his services.

7.) The Debtor submitted a monthly budget to the Court indicating that his net monthly income was approximately $789.00 and his net monthly expenses were approximately $858.00.

8.) The Debtor has a child by a prior marriage for whom he pays child support. The Debtor has remarried; his current spouse works at J.L. Hudson's Department Store as a clerk for $6.50 per hour. She has a daughter, seven years of age, who lives with them; sporadic child support payments are received from this child's father.

9.) The Debtor testified that he and his present wife have an arrangement whereby they each pay for their own expenses with their own income. Further, she is to pay the expenses incurred on behalf of her daughter who resides with them. They each contribute, however, to the mortgage. The wife pays for the taxes and insurance on the real property, and the Debtor pays the utilities.

10.) The Debtor's personal expenses include approximately $40.00 per month in prescriptions and other general medical expenses incurred in treating his epilepsy. The Debtor testified that this condition was very likely attributable to his former drug dependence. Debtor's budget sheet indicates that his expenses exceed his income by approximately $60.00 each month. (See Plaintiffs Exhibit 2.) This sheet, however, does not reflect his present wife's income and her expenses.

## LAW

The issue as previously stated is whether the facts of this particular case satisfy the exception to the non-dischargeability rule: whether repayment of the student loans would serve as an undue hardship on the Debtor.

The Bankruptcy Code declares student loan obligations to be exceptions to discharge under Section 523(a)(8). Section 523(a)(8) states the following:

*Section 523. Exceptions to discharge.* "(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
...(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—
(A) such loan first became due before five years before the date of the filing of the petition; or
(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ...."

There appears to be no dispute between the parties that the student loan obligations fall within the five (5) year requirement under subsection (A). The Debtor's final graduation date was May 1977. These loans became due, at the earliest, nine (9) months after that graduation date: approximately February 1978. The Debtor filed his petition in Bankruptcy on December 22, 1980. It appears then that the sole question arises with the interpretation and application of subsection (B).

The legislative history attempts to assist in the interpretation of Section 523(a)(8)(B). The Senate Report indicates that in following current law, student loans are excepted from discharge if they have become due and owing within five (5) years of the Bankruptcy filing. It further adds that such loans include direct student loans in addition to insured and guaranteed loans. The final remark states that "[t]his provision is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan." This final remark emphasizes the climate of opinion in Congress on this topic. In fact, Congress was attempting to quash the bankruptcies of former students motivated primarily to avoid payment of educational loan debts. *Report of the Commission on the Bankruptcy Laws of the United States,* Pt. I, House Document No. 93–137, 93d Cong., 1st Sess. (1973) at 140. For further discussion, see *New York State Higher Education Services Corporation v. Leonard Anthony Kohn,* 5 B.C.D. 419 (Bkrtcy.S.D.N.Y.1979).

There is no clear definition of the concept of undue hardship in the Bankruptcy Code. Thus the determination of whether or not the nondischargeability of a student loan debt will impose an undue hardship on the debtor shall be made upon a case by case basis.

The case law appears to be consistent in the strict interpretation of undue hardship. The cases tend to indicate that more than mere hardship or financial adversity must be proven by the debtor. *New York State Higher Education Services Corp. v. Kohn,* 5 B.C.D. 419 (Bkrtcy.S.D.N.Y.1979). See generally *U.S. v. Brown,* 18 B.R. 219 (Bkrtcy.D. Kan.1982) (undue hardship contemplates unique and extraordinary circumstances); *In re Abrams,* 19 B.R. 64 (Bkrtcy.D.Neb. 1982) (more than a present ability to pay); *In re Rappaport,* 16 B.R. 615 (Bkrtcy.D.N.J. 1981) (considerable hardship); *In re Warren,* 6 B.R. 233 (Bkrtcy.S.D.Fla.1980) (mere unemployment is insufficient).

A three pronged test has been developed to assist in classifying a particular hardship.

The case of *Pennsylvania Higher Education Assistance Agency v. Johnson,* 5 B.C.D. 532 (Bkrtcy.E.D.Pa.1979) establishes the mechanical undue hardship test, the good faith test, and the policy test. These tests allow the triers of fact to consider the totality of the circumstances.

■ The mechanical test for undue hardship contemplates the debtor's employment status, his future employment and income prospects, his educational level and skills, as well as his health, his family responsibilities, and the marketability of his skills. *State of Ohio, Student Loan Commission v. Kammerud,* 15 B.R. 1 (Bkrtcy.S.D.Ohio 1980), *New York State Higher Education Services Corp. v. Moore,* 4 B.C.D. 791 (Bkrtcy.W.D.N.Y.1978), *In re Matthews,* 3 Bankr.L.Rep. (CCH) ¶ 67,049 (Bkrtcy.D. Conn.1979). If a factual analysis of the facts indicates that this mechanical test has been met, the Court may require a demonstration that good faith has been shown through minimization of expenses by the debtor and his family, maximization of resources by the debtor's use of his skills and education to become as fully employed as possible, and by the debtor's effort to obtain employment. A further requirement may be requested by the Court in the form of the policy test. This test was based upon the policy found in Section 439A of the Higher Education Act, as amended in 1976, 20 U.S.C. Section 1087-3 (now repealed). The test considers the amount and percentage of the debtor's indebtedness which are represented by the student loans and the benefit derived from the education received. See *Johnson,* supra., at 542.

These last two tests need only be considered where the debtor meets the requirements of the mechanical test. If that primary test has not been met, the other two need not be considered.

### MECHANICAL UNDUE HARDSHIP TEST

Upon consideration of this Debtor's circumstances, it is apparent that the Debtor is attempting to overcome adversity. That is evidenced by the fact that not only is he working, but he has married and is attempting to put his life back in order after a hard and disappointing past. Although it appears the Debtor may not again be able to practice in his chosen profession, his educational background is exceptional and should still be a great benefit to him and future employers in the medical field. The Debtor did not offer into the record any evidence of nonemployability.

The Debtor presently earns $8.50 per hour after having received of raises in his hourly rate. With his educational background, this Court believes his income can only increase, these skills should surely be marketable. Although the Debtor may not expect to become a podiatrist or a pharmacist, both high paying professions, there are many opportunities available for a person with the Debtor's education and skills. He would certainly be more attractive to a medical employer than someone without this extensive education.

The Debtor's monthly budget does not include any unnecessary expenses or luxuries. However, the budget is incomplete. It does not reflect his wife's income or her share of the expenses. Although the Debtor testified to the maintenance of separate expenses, it is not unreasonable to believe that the Debtor's present spouse would attempt to assist in any expenses of the Debtor. It is also not unreasonable to expect that both husband and wife will commingle funds and expenses. Therefore, this Court must take into consideration the spouse's income of $6.50 per hour as a clerk.

The critical point in this Debtor's circumstances is his medical history and prognosis. Several cases have allowed a hardship discharge because the Debtor's health necessitated it. *Andrews v. South Dakota Student Loan Assistance Corporation,* 661 F.2d 702 (8th Cir.1981); *Matter of Hemmen,* 7 B.R. 63 (Bkrtcy.N.D.Ala.1980); *New York State Higher Education Services Corp. v. Barrington,* 7 B.R. 267 (Bkrtcy.W.D.N.Y.1980); *In Re La Chance,* 17 B.R. 1023 (Bkrtcy.D. Me.1982).

Although the Debtor's epilepsy may continue, it is not an illness which prohibits individuals from working and maintaining normal lives. The Debtor's self-imposed drug addiction no longer consumes him. Although the Debtor feels threatened by his possible submission to it again in the future, this Court is confident that the Debtor can maintain his rehabilitation considering the fact that now he has a wife and a more stable home life from which to work.

Reconsidering the legislative history and the purpose of this section, it is clear that the requirement of undue hardship "recognizes that in some circumstances the debtor, *because of factors beyond his reasonable control,* may be unable to earn an income adequate both to meet the living costs of himself and his dependents and to make the educational debt payments." (Emphasis Theirs) *Matter of Garcia,* 1 B.R. 253 (Bkrtcy.S.D.Fla.1979) citing to *Bankruptcy Act Revision: Hearings before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,* 94th Cong., 1st and 2d Sess., 1069–70, 1092 (1975–1976), (Pt. II, at 140 n. 16).

■ Without judging whether or not a past addiction to drugs is or is not a factor beyond the Debtor's reasonable control, this Court does not believe that those circumstances were of the type contemplated by Congress when the Code was written. The Debtor has overcome his addiction and is now working and successfully attempting to improve his status. His income is increasing, and no evidence has been presented to show that it will not continue to do so. The purpose of these educational loans is to provide individuals with the means to improve their educational level and their *chances* for success, not the fact of success. *In re Kohn,* supra., at 424. (Emphasis added) Accordingly, this Court finds that the Debtor has not sufficiently met his burden of proof under the mechanical undue hardship test, and therefore the Court will not respond to the requirements under the good faith or policy tests.

■ An increasing number of cases have indicated that although the facts presented do not require a finding of undue hardship, the Court can reduce the amount owed or revise the payment schedule. *In re Brown,* 18 B.R. 219 (Bkrtcy.D.Kansas 1982). *In re Littell,* 6 B.R. 85 (Bkrtcy.D.Or.1980); *Matter of Hemmen,* 7 B.R. 63 (Bkrtcy.N.D.Ala. 1980); *In re Archie,* 7 B.R. 715 (Bkrtcy.E.D. Va.1980); Notwithstanding this Court's opinion that the facts of this case do not support the mechanical test of undue hardship, this Court finds that it would be equitable to reduce the amount of nondischargeable liability by the amount of the accrued interest. The Debtor must only pay the principal amount of Six Thousand Two Hundred Eighty and no/100 Dollars ($6,280.00).

Furthermore, according to the Higher Education Act, repayment must be completed within fifteen (15) years after the notes were executed. 20 U.S.C. § 1077 (a)(2)(ii). Therefore the Court will set up the following repayment schedule:

1. The note dated May 23, 1973 in the amount of Fifteen Hundred and no/100 Dollars ($1,500.00) shall become due and payable on May 23, 1988.

2. The second note dated December 21, 1973 in the amount of One Thousand and no/100 Dollars ($1,000.00) shall become due and payable on December 21, 1988.

3. The third note dated May 25, 1974 in the amount of One Thousand Two Hundred Eighty and no/100 Dollars ($1,280.00) shall become due and payable on May 25, 1989.

4. The fourth and final note dated February 28, 1977 in the amount of Two Thousand Five Hundred and no/100 Dollars ($2,500.00) shall become due and payable on February 28, 1992.

This repayment schedule will enable the Debtor to establish a fund for the repayment of these loans, the first of which is not due until five years hence. This will give the Debtor a chance to stabilize himself before the first payment becomes due. Consequently, based upon the foregoing discussion, it is

ORDERED, ADJUDGED and DECREED that the student loan debt to the Defendant is nondischargeable to the extent of Six Thousand Two Hundred Eighty and no/100 Dollars ($6,280.00) and dischargeable as to the accrued and accruing interest. Payment shall be made in accordance with the guidelines set forth in this Opinion.

In so reaching these conclusions, the Court has considered all the evidence presented whether or not referred to specifically in the Opinion above.

It is FURTHER ORDERED that service of this Order shall be made by the Deputy Clerk of this Court mailing copies of same to all parties in interest and counsel of record in the above adversary proceeding.