**Kathleen COSSETTE, Plaintiff,**

v.

**HIGHER EDUCATION ASSISTANCE FOUNDATION, Defendant.**

**Arising in or related to the bankruptcy case of: In re Kathleen Jessie COSSETTE, Debtor.**

**Bankruptcy No. 5–83–72.**

**Adv. No. 5–83–56.**

United States Bankruptcy Court, D. Minnesota, Fifth Division.

Aug. 1, 1984.

David W. Adams, Legal Aid Service of Northeastern Minnesota, Duluth, Minn., for plaintiff-debtor Kathleen Jessie Cossette.

Frederick A. Dudderar, Jr., Duluth, Minn., for defendant Higher Education Assistance Foundation.

MEMORANDUM DECISION AND ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter has come on before the undersigned United States Bankruptcy Judge for decision upon a designated record, including Stipulation of Fact and Memoranda of Law by counsel for both parties. Pursuant to the Federal Rules of Civil Procedure, the Court makes the following Memorandum Decision as its Findings of Fact and Conclusions of Law.

Plaintiff-Debtor Kathleen Jessie Cossette (hereinafter "Debtor") is a divorced mother of a five-year-old minor child. She filed her Petition for Relief in this Court on March

18, 1983. Her schedules listed secured debts in a total of $2,089.69, and unsecured debts in a total of $4,498.99. The unsecured debts included a student loan incurred by her in September, 1982, in the sum of $2,500.00, the subject of this adversary proceeding for determination of dischargeability. This proceeding was commenced by the filing of Debtor's Complaint in this Court on August 2, 1983.

Debtor's sole source of income is Aid to Families with Dependent Children (AFDC) welfare assistance from St. Louis County, Minnesota, which she received in the amount of $412.00 per month as of November 29, 1983. Debtor's child had no independent income and Debtor had received no child support payments from her ex-husband for approximately three years prior to November 29, 1983. Debtor had been unemployed since August, 1982, and prior to that date had been employed at several positions including janitor, hostess/waitress, stock clerk, and machine operator. Debtor held only one of these jobs for more than one year and held most of them for periods of three months or less. Her income (apparently gross) from these positions varied from "minimum wage plus tips" up to $6.50 per hour. During the course of these jobs, and apparently during the course of prior education, Debtor had not acquired any significant work skills. Neither Debtor nor her child are disabled, physically or mentally.

Debtor's current monthly budget of living expenses is as follows:

| | |
|---|---|
| Rent | $195.00 |
| Electricity | 20.00 |
| Water and Gas | 18.00 |
| Telephone | 25.00 |
| Gas | 40.00 |
| Insurance | 30.00 |
| Food (in addition to Food Stamps) | 50.00 |
| Recreation | 20.00 |
| Clothing | 10.00 |
| Total | $408.00 |

The student loan which is the subject of these dischargeability proceedings was incurred by Debtor on or about September 28, 1982, when she executed a Promissory Note payable to the order of First National Bank of Duluth, Minnesota, in a principal amount of $2,500.00. This loan was guaranteed by the Higher Education Assistance Foundation, Defendant herein, and re-insured by the United States of America. Upon Debtor's default the Note was endorsed and assigned to Defendant. This loan was extended to Debtor so she could enroll in and attend a licensed practical nurse course at Duluth Area Vocational-Technical Institute, Duluth, Minnesota, beginning in September, 1982. Debtor attended this program for four months but failed her course of study at that point. She then left the course. Debtor has defaulted in her obligation to repay the Note and has made no payments on it. As of May 6, 1983, the total unpaid principal and interest due under the terms of the Note was $2,525.02.

Debtor has tried to obtain employment in the Duluth, Minnesota area. She has maintained current registration with the Minnesota Department of Economic Security and has applied for employment with a number of retail restaurants and other establishments. She owns no assets other than the minimal assets scheduled on her Bankruptcy Petition, has no potential or actual lawsuits or claims for damages, and has neither acquired nor given away substantial value in real or personal property since she filed her Petition for Relief in this Court.

11 U.S.C. § 523(a)(8)(B) is the statutory law to be applied in this matter. It reads as follows:

"... A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

.     .     .     .     .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ..."

The Bankruptcy Courts have applied this statute in numerous reported decisions since the effective date of the Bankruptcy Code. In enacting 11 U.S.C. § 523(a)(8) and its predecessors, Congress was attempting to combat a perceived abuse of the discharge in bankruptcy by debtors who filed Petitions for the sole purpose of avoiding government-insured student loan obligations. *In Re Wegfehrt*, 10 B.R. 826, 829, 830 (Bankr.N.D.Ohio 1981). The Code does not define the "undue hardship" which must be found to support a finding of dischargeability of student loans. In determining whether denial of discharge in a given case would lead to "undue hardship", the Courts have applied tests of varying degrees of precision. The Court finds that application of the comprehensive three-factor test set forth in *In Re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982), is the most appropriate tool for analysis to see that the Congressional intent is carried out. The application of the *Albert* test is not prohibited by the holding of the Eighth Circuit in *In Re Andrews*, 661 F.2d 702 (8th Cir.1981), as the analysis in *Andrews* dovetails neatly with one step in the comprehensive three-factor test adopted in *Albert*.

Under *Albert* the Court must first apply a threshold "mechanical test", under which it must consider the debtor's current employment and income, future employment and income prospects, educational level and work skills, health, family responsibilities, and marketability of skills. During this stage, the Court must examine the Debtor's current budget of necessary monthly living expenses and compare it to the debtor's present net monthly income and future employment and income prospects. *Andrews, supra*, at 703. The debtor meets her burden in this "mechanical test" by showing that there would be nothing left from her anticipated future income to enable her to make some payment on her student loan obligation without reducing what she and her dependents would need to maintain a minimal standard of living. If the debtor meets this burden, the Court may then apply a second test to determine whether the debtor comes before the Court in good faith requesting discharge of the student loan. To meet this "good faith" test, the debtor must show that she is actively minimizing her current living expenses and is maximizing her personal and professional resources to either find employment or to become as fully employed as possible. At least one Court has also required the debtor to make some colorable effort to repay the student loan in spite of present severe financial circumstances as a measure of good faith. *In Re Price*, 25 B.R. 256 (Bankr.W.D.Mo.1982). Lastly, the third part of the test, the so-called "policy test", requires the Court to determine whether the debtor's attempt to discharge her student loan obligation constitutes the abuse which the nondischargeability provision of 11 U.S.C. § 523(a)(8) was enacted to prevent. This test requires the Court to examine the amount or percentage of the debtor's total debt structure which is represented by student loans, and to determine the benefit which the debtor has derived from the education financed by those student loans. *Albert, supra*, at 101.

In the instant case, the Court concludes that Debtor has met her burden of proof and is entitled to a discharge of the student loan obligation endorsed and assigned to Defendant. Debtor has met her burden under the "mechanical test". She has shown, first, that she has no present ability to repay any portion of her student loan obligation out of her meager public assistance grant. The Court finds that Debtor has severely diminished prospects for obtaining employment which would generate sufficient income to allow her to make meaningful payments on her student loan obligation, given her history of unskilled work. Defendant urges that Plaintiff be denied the relief she requests merely because she has made no showing of illness, incapacity, disability, or extraordinary medical expense in or for herself or her dependent child. While there is no question that substantial physical or mental disability or continuing extraordinary medical expenses have been the primary basis for a finding of undue hardship in a number of cases, there is no

indication in the statute, its legislative history, or the many cases that such finding is a necessary element in the "mechanical test". Rather, this factor is merely one of several which must be considered as a totality.

Second, Debtor has met her burden on the elements of the "good faith test". Her monthly budget demonstrates expenses at a level which maintain no more than a stark standard of existence for herself and her child, given the current cost of living prevailing in the Duluth, Minnesota area. The record before the Court on her attempts to obtain employment is not exhaustive. However, it shows that she has made unsuccessful efforts to find and obtain employment in this area at restaurants and establishments similar to those where she has worked in the past. While she has not made any payments on her loan, she has made some effort to negotiate forebearance or another administrative remedy with Defendant or its predecessors in interest. In any event, the mere failure to make or attempt to make payments on student loan obligations does not prevent a finding of good faith where a debtor had never had the opportunity or resources to make payments. *In Re Birden*, 17 B.R. 891 (Bankr. E.D.Pa.1982).

Lastly, Debtor has met her burden and satisfied the requirements of the "policy test", and the Court is content that she has not filed her Petition herein for the sole purpose of avoiding responsibility for her student loan obligation. Though her student loan obligation constitutes over 50% of the total unsecured indebtedness scheduled on her Petition, Schedule A–2 of her Petition includes an obligation to Farmers and Merchants Bank of Marinette, Wisconsin, for a 1977 Chevrolet automobile in the amount of $2,202.69. This loan has not been reaffirmed, and the secured party apparently has repossessed the vehicle. Though it may be the largest single scheduled debt, the student loan does not dominate Debtor's debt structure. *See Wegfehrt, supra*, at 830.

Debtor urges that the lack of enhanced earning capacity from the educational program financed by her student loan can constitute the basis for a finding of undue hardship. *In Re Albert* does indicate that the Court can consider the benefit derived by the debtor from the education financed by the student loans in question in dischargeability proceedings. However, it is clear that the Court must do so to further the end that debtors would not be unjustly enriched by gaining earning power at the expense of student loans discharged in bankruptcy. Debtor urges that the obverse should apply in this case. The Court's holding today is not to be construed as a holding that the lack of enhanced earning capacity due to this Debtor's failure in her course of study financed by these educational loans can, in and of itself, constitute a ground for a finding of undue hardship. Congress did not and could not have intended that the discharge in bankruptcy would automatically hold a debtor harmless from her inability or unwillingness to meet the minimum standards of her course of study. This would be the net result of the position which the Debtor urges the Court to adopt. *Cf. In Re Rice*, 13 B.R. 614, 617 (Bankr.S.D.1981). The Court's decision in this case is, rather, premised on its findings that Debtor does not have the present ability to repay her student loan obligation, that she has no reasonable prospect of gaining future ability to repay it, and that denial of discharge would impose an undue hardship upon the Debtor and, more significantly, upon her dependent minor child.

NOW, THEREFORE, IT IS HEREBY ORDERED that judgment be and hereby is granted in favor of Plaintiff-Debtor and, further that the liability of Kathleen Jessie Cossette, Debtor, to Defendant Higher Education Assistance Foundation, and any liability of Plaintiff-Debtor to any insurer or guarantor on said obligation be, and it hereby is, discharged.

LET JUDGMENT BE ENTERED ACCORDINGLY.