Randy B. SHOBERG, Plaintiff,

v.

**MINNESOTA HIGHER EDUCATION COORDINATING COUNCIL, Defendant,**

**Higher Education Assistance Foundation, a non-profit Minnesota corporation, Intervenor.**

**Arising in or related to the bankruptcy case of:**

**In re Randy B. SHOBERG, Debtor.**

**Bankruptcy No. 5–83–184. Adv. No. 5–83–63.**

United States Bankruptcy Court, D. Minnesota, Fifth Division.

Aug. 1, 1984.

John N. Nys, Duluth, Minn., for plaintiff-debtor Randy B. Shoberg.

Frederick A. Dudderar, Jr., Duluth, Minn., for Intervenor Higher Educ. Assistance Foundation, assignee of defendant Minnesota Higher Educ. Coordinating Council.

## MEMORANDUM DECISION AND ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter has come on before the undersigned United States Bankruptcy Judge for decision upon a designated record, including a Stipulation of Fact, transcript of a deposition of Debtor-Plaintiff, and Memoranda of Law by counsel for both parties. Pursuant to the Federal Rules of Civil Procedure, the Court makes the following Memorandum Decision as its Findings of Fact and Conclusions of Law.

Plaintiff-Debtor Randy B. Shoberg (hereinafter "Debtor") is a 26-year-old resident of International Falls, Minnesota. He is the divorced non-custodial parent of two children, presently ages six and four, who reside with their mother in Bemidji, Minnesota. He filed his Petition for Relief in this Court on July 25, 1983. His schedules listed secured debts in the amount of $1,200.00 and unsecured debts in a total of $5,089.03. The unsecured debts included a student loan incurred by him on or about October 26, 1981, in the principal amount of $3,000.00, the subject of this adversary proceeding for determination of dischargeability. This proceeding was commenced by the filing of Debtor's Complaint in this Court on September 23, 1983.

Debtor is presently self-employed as an auto body repairman operating out of his retired parents' garage. His income from this work is completely dependent upon the number and variety of customers who come to him for auto body repair. During his first year of operation, from October, 1982 through October, 1983, his net month-

ly income from this self-employment varied from no income at all for several months up to a maximum of $460.00 for one month. His current net monthly living expenses are as follows:

| | |
|---|---|
| Rent to parents | $100.00 |
| Child support | 100.00 |
| Clinic bill | 50.00 |
| Medication | 80.00 |
| Miscellaneous | 50.00 |
| Total | $380.00 |

Debtor dropped out of high school in 1974 at the tenth-grade level and has not received a GED. During the fall of 1980 he began a two-year course of study in auto body repair at the Bemidji, Minnesota Area Vocational-Technical Institute. He incurred the student loan which is the subject of these dischargeability proceedings on or about October 28, 1981, when he executed a Promissory Note payable to the order of the Minnesota State Student Loan program in the principal amount of $3,000.00. This loan was guaranteed by the Higher Education Assistance Foundation, Intervenor herein, and re-insured by the United States of America. Upon Debtor's default the Note was endorsed and assigned to Intervenor. This loan was extended to Debtor so he could attend the above-described course. Debtor attended this course for one year. He dropped out of the course due to extreme emotional stress caused by marital difficulties and the commencement of a dissolution of marriage action by his wife. He has defaulted on his obligation to repay the Note and has made no payments on it. As of August 19, 1983, the total unpaid principal and interest due under the terms of the Note was $3,219.90.

Debtor's work history is limited to unskilled employment. He was employed for a period of approximately four years between 1975 and 1979 at Boise Cascade, International Falls, Minnesota, as a general laborer. During his vocational-technical school training he was employed as a janitor by ServiceMaster in Bemidji on a part-time basis for a gross wage barely in excess of the federal minimum wage. After he dropped out of his vocational-technical course, Debtor returned to Little Fork, Minnesota, and began working in his brother's auto body repair shop. Around this time, his brother suffered a severe eye injury which prevented him from being involved in the business. During the time when Debtor was operating the business, "people just stopped coming" and the business failed. Since the failure of his brother's business, Debtor has supported himself with occasional odd jobs and the sporadic auto body repair work he has conducted in his parents' garage.

Debtor has suffered from the condition of ulcerative colitis since age 12. This condition was aggravated by the stress of the break-up of his marriage and has resulted in internal bleeding, frequent episodes of diarrhea, disruption of Debtor's sleep, and continuing severe abdominal pain. These symptoms have persisted since 1982. Debtor's physician has recommended corrective surgery which would result in a colostomy. Performance of this surgery may prevent Debtor from engaging in any work activity for a substantial period of time.

Debtor has tried to obtain employment in the International Falls, Minnesota area by remaining currently registered with the Minnesota Department of Economic Security and by applying for employment with at least one auto dealership and a retail store managed by a personal friend. He has been unsuccessful in obtaining employment. He owns no assets other than the minimal assets scheduled on his bankruptcy Petition, has no potential or actual lawsuits or claims for damages, and has neither acquired nor given away substantial value in real or personal property since he filed his Petition for Relief in this Court.

This proceeding is governed by 11 U.S.C. § 523(a)(8)(B), which provides as follows:

"... A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ..."

■ The burden of proof on the issue of "undue hardship" lies on the debtor alleging its existence. *In Re Norman*, 25 B.R. 545 (Bankr.S.D.Cal.1982); *In Re Price*, 25 B.R. 256 (Bankr.W.D.Mo.1982). This Court has found that the comprehensive three-pronged test set forth in *In Re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1981), is the most appropriate means to carry out the Congressional intent that discharge of student loans in bankruptcy be granted only in exceptional circumstances. *Cossette v. Higher Education Assistance Foundation*, 41 B.R. 689 (Bankr.D.Minn.1984).

■ Under this test, the Court must first apply a threshold "mechanical test", considering the debtor's current employment and income, future employment and income prospects, educational level and work skills, health, family support responsibilities, and marketability of job background and skills. The Court must compare the debtor's current necessary monthly living expense budget with the debtor's current and anticipated future income to determine whether the debtor has, or will have, some surplus of income which would enable him to make some reasonable payment on his student loan obligation without reducing a minimal standard of living for him and his dependents. *In Re Andrews*, 661 F.2d 702 (8th Cir.1981). If the debtor discharges his burden in this prong of the test, the Court must then determine whether the debtor is in good faith in requesting discharge of his student loans. The debtor must demonstrate that he is actively minimizing his current necessary monthly living expenses and is maximizing his effort to either find employment or to become as fully employed as possible. *Albert, supra,* at 101.

Under the third prong, the so-called "policy test", the Court must determine whether the debtor's attempt to discharge his student loan obligation constitutes the abuse which the nondischargeability provision of 11 U.S.C. § 523(a)(8) was enacted to prevent. To some extent, this requires the Court to infer the debtor's motivation for filing his Petition for Relief, by determining the percentage of the debtor's total debt structure which is represented by student loans, and determining the benefit which the debtor has derived from the education financed by those student loans. *Id.*

If the debtor meets his burden of proof on the three prongs of the test, he is entitled to a discharge of the student loan obligation endorsed and assigned to Intervenor. Debtor has shown he has no more than a tenuous and variable current monthly income, based upon the unpredictable influx of auto body work, and further, upon his ability to collect his fees from his customers. Debtor was unable to sustain a substantial volume of business and profit when he managed his brother's shop. The evidence tends to indicate that he can not sustain the same now. The average of his net monthly income over a period of thirteen months was insufficient to meet the absolutely minimal living expenses which he alleges. To a great extent, Debtor is dependent upon the charity of his parents and relatives for his own necessities of life. The Court therefore finds that he has no present ability to make any regular payment on his student loan obligation from his minimal and extremely variable income.

Debtor has demonstrated that his medical condition substantially interferes with his daily activities and, by inference, with his ability to find and maintain steady employment. Debtor's lack of a high school diploma or GED, lack of further completed vocational or technical training, and work history largely limited to unskilled work, further diminish his prospects for obtaining employment which would generate sufficient income to allow him to make substantial future payments on his student loan obligation. Lastly, Debtor has an obligation of support to his dependent minor children from his prior marriage which consumes a substantial portion of his current monthly income. The Court finds that denial of discharge of Debtor's student loan

would impose undue hardship upon Debtor's dependent children, as it would tend to make less of Debtor's current income available for the satisfaction of his support obligation to them.

■ Second, Debtor has met his burden under the "good faith" prong of the test. It would be difficult to formulate a budget for a divorced man with a child support obligation and substantial continuing medical expenses which would provide for lower monthly living expenses. While Debtor apparently has not made an exhaustive search for employment, he was turned down for a position in auto body repair due to his medical condition and was not able to find employment at a retail store managed by a close personal friend of his. His registration with the Minnesota Department of Economic Security has not produced substantial job prospects. Though he has not made even a minimal payment on his student loan obligation, the mere failure to make such a minimal payment does not prevent a finding of good faith where a debtor has never had the resources to make payment. *In Re Birden*, 17 B.R. 891 (Bankr.E.D.Pa.1982).

■ Lastly, it is apparent to the Court that a grant of discharge of Debtor's student loan obligation would not frustrate the Congressional intent in enacting 11 U.S.C. 523(a)(8). Though Debtor's student loan is his largest single scheduled unsecured debt, it does not dominate Debtor's total secured and unsecured debt structure. *In Re Wegfehrt*, 10 B.R. 826, 830 (Bankr.N. D.Ohio 1981). Debtor has, therefore, met his burden on the third prong of the three-part test (the "policy test").

■ Intervenor urges that the Court is free to restructure Debtor's payment schedule on his student loan obligation in whole or in part, and to provide for lower monthly payments and/or a partial but not complete discharge of the debt. A few Courts have taken this approach, including the Court in *In Re Albert. See In Re Littel*, 2 C.B.C.2d 1105 (Bankr.D.Or.1980); *In Re Hemmen*, 3 C.B.C.2d 140 (Bankr.N.

D.Ala.1980); *In Re Albert, supra*. Debtor filed his Petition under Chapter 7 of the Bankruptcy Code. It was not filed under Chapter 13, which may afford a debtor the remedy of a structured partial repayment and partial or even full discharge of student loan obligations. *In Re Martini*, 28 B.R. 932 (Bankr.S.D.N.Y.1983). *See also In Re Estus*, 695 F.2d 311, 314 at n. 5 (8th Cir.1982). Without reaching the question of whether the Court has the authority under 11 U.S.C. 523(a)(8) to order such relief in Chapter 7 proceedings, this Court concludes that such relief would be inappropriate in this case. Debtor's current and anticipated income and expenses are such that even a minimal payment of $5.00 to $10.00 per month would impose an undue hardship upon him and his two dependent minor children.

■ Debtor has requested an award of his reasonable attorney fees for prosecution of this proceeding for determination of dischargeability. Debtor cites the broad grant of equitable powers to the Bankruptcy Court under 11 U.S.C. 105(a) as his sole authority for his request. The Court declines to adopt Debtor's reasoning. The "American Rule" on attorney fees prevents the Court from making an award to a prevailing party in the absence of proof of one of the several judicially-recognized exceptions, or a specific statutory authorization. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 257–259, 95 S.Ct. 1612, 1616, 1621–1622, 44 L.Ed.2d 141 (1975). Debtor apparently argues that Intervenor and its insurer acted in bad faith in insisting that this proceeding be litigated to judgment, which is allegedly Intervenor's standard policy. The statutory burden of proof in this proceeding was entirely on Debtor. In the absence of a particularized showing of bad faith or ill-will toward Debtor, Intervenor cannot be charged with bad faith merely for insisting that Debtor make the individualized showing to the Court which the statute contemplates. Congress made no express provision for an award of attorney fees in proceedings for dischargeability of student loans. 11 U.S.C. 105(a) therefore does not expand the

Court's authority to grant attorney fees in this type of proceeding. *In Re Fox*, 725 F.2d 661 (11th Cir.1984); *In Re FAS International*, 382 F.Supp. 77, 81 (S.D.N.Y. 1974), *aff'd per curiam*, 511 F.2d 1164 (2nd Cir.1975), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975).

NOW, THEREFORE, IT IS HEREBY ORDERED that judgment be and hereby is granted in favor of Plaintiff-Debtor and, further, that the liability of Randy B. Shoberg, Debtor, to Intervenor Higher Education Assistance Foundation, and any liability of Plaintiff-Debtor to any insurer or guarantor on said obligation be, and is, hereby discharged.

LET JUDGMENT BE ENTERED ACCORDINGLY.