**In re Marlin Adam BINDER, Debtor.**

**Marlin Adam BINDER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION, Defendant.**

Bankruptcy No. 85–05069.
Adv. No. 85–7054.

United States Bankruptcy Court,
D. North Dakota.

Oct. 28, 1985.

Edwin W.F. Dyer III, Bismarck, N.D., for plaintiff.

Rodney S. Webb, U.S. Atty., Fargo, N.D., Jerome C. Kettleson, Asst. U.S. Atty., Bismarck, N.D., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Debtor and the Plaintiff herein, Marlin Adam Binder, commenced the instant adversary proceeding seeking a determination that federally guaranteed student loans incurred between 1979 and 1982 be discharged by reason of undue hardship pursuant to section 523(a)(8)(B) of the Bankruptcy Code. The case came on for

trial on October 9, 1985. The facts as adduced from the trial evidence, as well as the parties' Stipulation of Uncontested Facts, may be summarized as follows:

## FINDINGS OF FACT

As of May 30, 1985, the Debtor is indebted to the United States Department of Education in the sum of $6,762.64 in consequence of a series of four federally insured student loans taken out during the years 1979 through 1982. Interest accrues at the rate of 7% per annum.

The Debtor is 28 years of age, unmarried, and presently residing with his parents in Bismarck, North Dakota. He has suffered from a series of personal calamities, including aborted marriage plans and the death of his two-month-old child born out of wedlock. His Chapter 7 Petition filed on February 5, 1985, reveals unsecured debts totalling $26,403.00 inclusive of the student loans and no real or personal property save for $150.00 worth of wearing apparel and personal possessions. He is presently employed on a part-time basis as a gas station attendant earning $3.50 per hour, with a gross monthly income of $200.00 per month. After graduation from high school, the Debtor embarked upon an educational course in various colleges, aiming towards a ministerial career. Despite several intermittent enrollments, he is thus far unsuccessful in completing any course of study. Since high school, and except for those semesters he was attending college, the Debtor has been employed in a wide variety of entry-level jobs. This employment has included route driver for Frito-Lay, retail salesman in drug store, variety store and liquor store. In 1982, he began work as an insurance salesman and over the course of 15 months, moved to three different companies. Since 1978, no employment with any one employer has lasted for more than several months. The Debtor claims to be a professional salesman but able to handle only low pressure, limited hour type of jobs. He would like to obtain better employment and move out of his parents' home but professes that working any longer than two days per week is hard on his nerves.

The Debtor has suffered serious back injuries incurred in a motorcycle accident and also has allergies, but according to his physicians, he is presently under no physical disability or illness. His principal problem, and the one which he believes is the cause of his continuing lack of gainful employment, is mental in nature.

Commencing in 1978, the Debtor has been hospitalized in three different hospitals, including the State Hospital in Jamestown for mental problems, first diagnosed in 1978 as depressive neuroses. Over the years, the Debtor has been seen by four psychiatrists and several psychologists and sociologists. The psychiatrists agree on a diagnosis of bipolar disorder, a diagnosis that continues to this day. This disorder has been defined by Dr. S.J. Thakor, M.D., as a disorder manifesting both manic and depressive spells. As observed in the Debtor, the various treating physicians have noted him to be severely depressed, restless, impulsive, upset and insecure. They have also noted anxiety, hyperactivity, mood fluctuations and suicidal tendencies. Various courses of treatments have been recommended, and for a number of years the Debtor was intermittently placed upon a variety of drugs, including Edep, Eskalith, Navene, Dalmane, Xanax and Lithium Carbonate. He has been resistive of treatment, failing to take prescribed medications or follow his physician's advice, despite the opinion from Dr. Thakor that if he followed any kind of reasonable treatment program, the chances of improvement and gainful employment are good. The numerous medical records received into evidence suggest that the Debtor has refused to accept medical treatment or cooperate with counselors. One rehabilitation counselor opined in a September 1985 report that the Debtor is aggressive, negative and evasive and as a result, while he has the ability to obtain employment, his potential for maintaining that employment is very limited. This counselor was of the opinion that the Debtor's exhibited behav-

ior is characteristic of his mental illness, which is the cause of his job retention problems. The Debtor also believes his bipolar disorder is the cause of his inability to maintain gainful employment. Dr. Thakor, a board certified psychiatrist, is not quite as definite in his opinion. He saw the Debtor as a patient on different occasions from June 1982 to November 1983. He testified through deposition that the Debtor's job problems could be due to the bipolar disorder but could also be due to impulsive behavior and poor judgment which may be merely personality traits rather than manifestations of the bipolar disorder. He acknowledged, however, that bipolar individuals could exhibit these traits also but, in the case of the Debtor, felt they were reflective of his personality characteristics. Aside from the bipolar disorder, Dr. Thakor believed the personality traits also created problems for the Debtor in terms of his employment.

## CONCLUSIONS OF LAW

Section 523(a)(8)(B) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—
>
> .    .    .    .    .
>
>> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(18)(B). Pursuant to the above section, a debtor may obtain a discharge of a student loan if it can be shown that payment of the obligation would create a "undue hardship". The burden of proof on the issue of "undue hardship" rests with the debtor. *In re Goldman*, 48 B.R. 364 (D.C.S.D.N.Y.1984); *Shoberg v. Minn. Higher Educ. Coordinating Counsel*, 41 B.R. 684 (Bankr.D.Minn.1984); *In re*

*Price*, 25 B.R. 256 (Bankr.W.D.Mo.1982). Although the Code itself does not define the term "undue hardship", the courts, including ours, have adopted a three-prong test in determining whether an obligation is dischargeable under the "undue hardship" standard. This test, first enunciated in *In re Johnson*, 5 BCD 532 (Bankr.E.D.Pa. 1979), provides for a progressive method of analyzing the facts of a particular case. *See Erickson v. NDSU and Minn. Higher Education Foundation*, 52 B.R. 154 (Bankr.D.N.D.1985); *see also Shoberg*, supra.; *Cossette v. Higher Education Assistance Foundation*, 41 B.R. 689 (Bankr.D. Minn.1984); *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1981). This three-part assessment includes the mechanical, good faith and policy tests, each of which are considered in progressive order beginning with the mechanical test. The mechanical test requires the court to consider the debtor's present employment, income status, future employment and income potential, educational level and skills, health, family support responsibilities, and the market ability of the debtor's skills. This test, in essence, requires a showing that the debtor's financial resources during the foreseeable future would not be sufficient to pay off the loan as well as maintain himself and dependents above poverty level. The inclusion of the term, "foreseeable future" has been interpreted as requiring that the basis of the hardship must be long term. *In re Bowen*, 37 B.R. 171 (Bankr.M.D.Fla.1984).

■ If the debtor meets its burden of proof with regards to the mechanical test, then he must move on to meet the good-faith test by demonstrating that he is making an effort towards minimizing his expenses while at the same time maximizing resources by use of his educational and employment efforts. If the court then is satisfied that this second element is met, the policy test is reached where the court must consider whether the debtor's attempt to discharge the loans constitutes the kind of abuse section 523(a)(8) was enacted to prevent.

■ As regards the mechanical test, it is established that the Debtor is presently of extremely limited means without the present financial ability to live independent of his parents. Although not physically impaired, he does suffer from a bipolar disorder as well as personality traits, either one of which or a combination of both have manifested themselves in a chronic inability to obtain and maintain gainful employment. Whether this problem can be attributed to the bipolar disorder is unclear from the evidence, but the facts do establish that the Debtor has exhibited rather serious mental and physiological impairments, any one of which could be the cause of his employment problems. Courts are in agreement that medical problems, including mental illness, can be a significant factor in determining the dischargeability issue. *In re Dyer*, 40 B.R. 872 (Bankr.E.D.Tenn.1984); *Nichols v. Regents of University of California*, 15 B.R. 208 (Bankr.D.Me.1981); *New York State Higher Ed. Services v. Barrington*, 7 B.R. 267 (Bankr.W.D.N.Y. 1980). It is not the fact of the physical or mental condition that is critical but rather the effect that condition has upon the debtor's ability to obtain and maintain adequate financial resources during the foreseeable future. As stated in the case of *In re Brisco*, 16 B.R. 128, 131 (Bankr.S.D.N.Y. 1981), "the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment". The mere existence of present underemployment in a marginal job is not determinative of the issue, but if that underemployment or marginal employment is caused by mental problems likely to be continuous in nature, then it becomes significant. The Court is satisfied from the evidence that the Debtor is presently suffering from some form of mental or emotional disturbance which presently renders him unable to obtain and maintain suitable employment. He has exhibited mental and personality difficulties at least since 1978 and, coupled with his chronic hospitalizations, treatments and job retention problems, suggest that these difficulties are of a chronic nature with no likelihood of improving in the foreseeable future. Consequently, this Court believes they will continue to make it difficult for him to obtain and maintain gainful employment in the foreseeable future. The problems exhibited by the Debtor giving rise to this Court's conclusion are similar to those found to exist in the cases of *In re Dresser*, 33 B.R. 63 (Bankr.D.Me.1983) and *In re Dyer*, supra. Both of those cases involved individuals who were suffering from chronic mental or emotional disorders. Both courts concluded that the chronic nature of the disorders rendered the debtors in those cases unable to obtain and retain suitable employment. This Court is likewise satisfied that the Debtor will be unable in the foreseeable future to generate enough income to pay off the loan and maintain himself above poverty level. The mechanical test has been met.

With respect to the good-faith test, this Court believes from the facts that the Debtor has made an effort to maximize his resources such as they are. He has exhibited a desire and willingness to obtain and maintain meaningful employment over the years without much success. The Debtor, despite his unrealistic characterization of himself as a professional salesman, can be regarded as an underachiever probably doomed to minimum wage jobs similar to what he is presently engaged in. Given his present living standards, his job history and health problems, the Court believes the Debtor is minimizing his expenses while maximizing his resources.

Finally, the Court does not believe that the Debtor's motivation for attempting to discharge the student loans in question constitutes the kind of abuse section 523(a)(8) was enacted to prevent.

Accordingly, and for the reasons stated, the Court concludes that the indebtedness of Marlin Binder in the sum of $6,762.64 plus interest at the rate of 7% per annum owing to the United States Department of Education is dischargeable, the Debtor having met the undue hardship standard of section 523(a)(8)(B) of the Bankruptcy Code.

IT IS SO ORDERED.

JUDGMENT MAY BE ENTERED ACCORDINGLY.