In re James E. CAHILL, Darlene A. Cahill, f/k/a Darlene A. Ellis, Debtors.

James E. CAHILL, Plaintiff,

v.

NORSTAR BANK OF UPSTATE NEW YORK and New York State Higher Education Services Corporation, Defendants.

Bankruptcy No. 87–00195.
Adv. No. 88–0021.

United States Bankruptcy Court,
N.D. New York.

Oct. 3, 1988.

Miga, Haggas & Parker (Brian Michael Miga, of counsel), Utica, N.Y., for plaintiff.

Margaret M. Gonsowski, Albany, N.Y., for Defendant, New York State Higher Educ. Services Corp.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court is called upon to decide whether or not the payment of an educational loan by James E. Cahill ("Debtor") would constitute an undue hardship so as to allow him to discharge the debt, pursuant to § 523(a)(8)(B) of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp. 1988) ("Code").

### FACTS

On February 13, 1987, the Debtor and his wife, Darlene A. Cahill, filed a Chapter 7 petition under the Code, which recited $87,-775.00 in debt and $32,400.00 in property. Norstar Bank was listed in Schedule A–3 as holding an unsecured debt for a student loan from November 1979–1984 in the amount of $13,000.00, the third largest debt listed in the petition. The student loan debt is now the second largest debt since the largest claim was reduced by two-thirds due to the abandonment of the collateral, a mobile home, by the Chapter 7 Trustee on April 2, 1987. The Debtor and his wife were granted a discharge by virtue of an Order dated October 27, 1987 and on the same date a Final Decree was entered closing the case.

On November 30, 1987, the Court granted an Order pursuant to Code § 350(b) and Rule 4007(b) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") reopening the case to allow the Debtor to institute an adversary proceeding to determine the dischargeability of his student loan debt. He commenced this adversary proceeding on February 26, 1988 and named Norstar as the defendant. The Debtor amended his Schedule A–3 on March 31, 1988 to add as a creditor the New York State Higher Education Services Corporation ("NYSHESC"), the governmental guarantor of the student loan. Prior to trial, NYSHESC, who had defended the adversary proceeding from the start, and the Debtor stipulated that NYSHESC's attorney was also appearing on behalf of Norstar. The trial was conducted in Utica, New York on June 23, 1988 and the matter was taken under advisement on July 15, 1988 after both parties submitted memoranda of law.

## BACKGROUND

Based upon the answers, dated April 29, 1988, to interrogatories served on the Debtor by NYSHESC pursuant to Rule 33 of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."), Defendant's exhibits 1 and 3, the following facts were established:

1. Debtor is twenty-seven years of age and in good health.

2. Debtor is divorced and pays no alimony or child support, since the couple had no children.

3. He graduated in May 1986 with an associate degree in business and his major areas of study were banking and insurance.

4. The Debtor has been employed by Metropolitan Insurance Company since October 1984 while still in school, and did not utilize his school's placement services.

5. He currently is an insurance claims analyst with Metropolitan, earning $17,000.00 annually or $332.00 per week, and receives medical insurance.

6. He previously earned $10,000.00 in 1985, $16,000.00 in 1986 and $18,000.00 in 1987 before the assignment to his current position which does not pay any overtime.

7. Debtor has no other sources of income and receives no public assistance benefits.

8. Debtor owns a 1985 Ford Thunderbird automobile on which he makes monthly payments of $244.00. *See also* Exhibit A (Ford Motor Credit Co. payment book cover).

9. Debtor owes Montgomery Ward and Sears Roebuck $550.00 and $250.00, respectively, for consumer purchases and currently makes monthly payments on both debts. *See also* Exhibits C & D (Montgomery Ward and Sears' monthly statements).

10. Debtor did not contact Norstar for a deferral of his student loan.

11. For financial reasons, the Debtor currently resides with his parents and shortly plans to rent his own apartment, at an estimated monthly cost of $1,000.00 which will include rent, utilities, food, clothing, and miscellaneous expenses.

It is uncontroverted that the student loan, with a principal of $12,456.00 and a seven per cent interest rate, became due nine months after graduation, March 1, 1987, with monthly payments of $144.00.

## ARGUMENTS

The Debtor basically argues that he has insufficient income to support himself and repay his student loan. He maintains that all of his income is necessary for him to be self-supporting.

NYSHESC takes the position that the Debtor is a single healthy young man with no dependents who will not be subjected to any undue hardship if he is required to pay his student loan debt.

At trial, the Debtor testified that he pays his parents $300.00 a month in rent pursuant to a rental agreement, Exhibit F, and that his car was necessary for his job. He stated that he "netted" $451.04 every two weeks, *see also* Exhibits H & I (bi-weekly pay stubs from Metropolitan), and itemized his other living expenses, which included car insurance, *see* Exhibit E (Atlantic Mutual Co. six month statement of charges and credits), daily five dollar lunches at work, twenty dollars weekly on gas for work, recreation, clothes and gifts for his nieces and nephews. The Debtor also asserted that he had paid his ex-wife's attorney's fees in their 1987 divorce and hoped to remarry in the next few years and have children.

He stated that he did not file the Chapter 7 to discharge his student loan. The Debtor testified that he had tried unsuccessfully to find another job with a higher salary and that his current position did not guarantee salary increases or entail mandatory overtime. In sum, he feels that it would be an undue hardship for him to pay his student loan debt because then he would have no opportunity to get ahead based upon his monthly net income of $902.00 and his monthly expenses of $800.00.

On cross-examination, the Debtor stated that he had no complaints from Metropolitan about his work performance and that he had started at level 3 and was now at level 6. He also stated that he used his

1986 federal and state income tax refund for clothing and entertainment expenses. The Debtor testified that he had no stocks or bonds, had purchased his car as a demonstration model in January 1986 while a part-time student, and had not listed his student loan on the car loan application.

The Debtor also admitted that he incurred about $5,000.00 pre-petition in sports wagering but no longer gambled. He admitted attending the track twice since it opened this season and spending thirty dollars each time. With regard to the rental agreement between himself and his parents, he explained that he didn't include in his answers to the interrogatories the $300.00 monthly rent he has been paying since April 1986 because it was a temporary setup until the bankruptcy was settled and he could get his own apartment.

NYSHESC called no witnesses and offered into evidence the previously referred to Exhibits 1 and 3, which were then received by the Court.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding under the provisions of 28 U.S.C.A. §§ 1334(b) and 157(a), 157(b)(1) and (b)(2)(I) (West Supp.1988). As with all adversary proceedings, Fed.R.Bankr.P. 7001(6) and 7052, and in this case, 4007, govern.

### DISCUSSION

■ The Second Circuit has recently set forth the standard to be used in determining what constitutes "undue hardship" for the purposes of Code § 523(a)(8)(B). *See Brunner v. New York State Higher Education Services, Corp.*, 831 F.2d 395 (2d Cir.1987), *aff'g* 46 B.R. 752 (S.D.N.Y.1985). In denying the Chapter 7 debtor's application to discharge her student loans, the Circuit Court adopted the district court's requirement of a three-part showing:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans

*Id.* at 396.

This standard, in looking towards the totality of circumstances, incorporates the three-tiered economic, good faith and policy test enunciated in *Pennsylvania Higher Education Assistance Agency v. Johnson (In re Johnson)*, 5 B.C.D. 532 (Bankr.E.D.Pa. 1979) which many courts have adopted. *See, e.g., In re Conner*, 89 B.R. 744 (Bankr. N.D.Ill.1988); *Courtney v. Gainer Bank (In re Courtney)*, 79 B.R. 1004 (Bankr.N.D. Ind.1987); *Craig v. Pennsylvania Higher Education Assistance Agency (In re Craig)*, 64 B.R. 854 (Bankr.W.D.Pa.1986); *North Dakota State Board of Higher Education v. Frech (In re Frech)*, 62 B.R. 235 (Bankr.D.Minn.1986); *Albert v. Ohio Student Loan Association (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *Lezer v. New York State Higher Education Services Corp. (In re Lezer)*, 21 B.R. 783 (Bankr. N.D.N.Y.1982); *Briscoe v. Bank of New York (In re Briscoe)*, 16 B.R. 128 (Bankr.S. D.N.Y.1981).

The *Brunner* court noted that the debtor's ineligibility for the discharge of her student loan debt was buttressed by the fact that she was "not disabled, nor elderly" and had no dependents. Additionally, her conduct in filing for the discharge within one month of the first payment of her loan becoming due, without requesting a deferral, did not exhibit a good faith attempt to repay her student loans.

The facts of the case at bar are almost completely on point with the facts in *Brunner* but for one glaring difference: Marie Brunner was unemployed, unlike the Debtor who has been gainfully employed by the same company for the past four years, and faces a stable employment future by virtue of his own testimony at trial that Metropolitan had no complaints about his work and his three level rise in those four years. This difference makes the Debtor's position

particularly indefensible, distinguishing the case at bar from other decisions where an unemployed debtor's student loan debt was determined nondischargeable. *See, e.g., Makarchuk v. National Direct Student Loan, Norstar Bank and New York Higher Education Services Corp. (In re Makarchuk),* Adv.Pro. No. 86–0014, Case No. 86–00071 (Bankr.N.D.N.Y. Dec. 17, 1986) [1986 WL 22272]; *Holzer v. Wachovia Services, Inc.,* 33 B.R. 627 (Bankr.S.D.N.Y. 1983).

Marie Brunner's circumstances were truly unstable and adverse in contrast to the Debtor's positive employment picture. Moreover, the alleged disability of his parents, absent any proof, is not the kind of exception and/or additional circumstance to be considered under the *Brunner* standard as impacting upon his ability to pay his student loan. *See, e.g. Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702, 704–705 (8th Cir.1981) (disease of Chapter 7 debtor factor in determination of undue hardship); *Lohman v. Connecticut Student Loan Foundation (In re Lohman),* 79 B.R. 576, 581 (Bankr.D.Vt.1987) (exceptional circumstances include illness, lack of usable skills, existence of a large number of dependents or a combination thereof).

While it may be true that the Debtor is unable to be as financially independent as he would like to be because of his bankruptcy filing, the record discloses a current standard of living that could not be characterized as minimal or at a poverty level. *See Medeiros v. Florida Dep't of Educ. (In re Medeiros),* 86 B.R. 284, 286 (Bankr.M.D. Fla.1988). *See also Bryant v. Pennsylvania Higher Education Assistance Agency (In re Bryant),* 72 B.R. 913 (Bankr.E.D.Pa. 1987) (student loan debts discharged where Chapter 7 debtors' annual income falls below poverty income guidelines set forth by Bureau of the Census and federal government, which was $5,500.00 for one person living in all states but Alaska and Hawaii in 1987); *Wells v. Illinois ex rel (In re Wells),* 37 B.R. 684 (Bankr.N.D.Ill.1983) (educational loan discharged where Chapter 7 debtor's monthly deficit is $450.00 and she and her five children already living at poverty level); *Wegfehrt v. Ohio Student Loan Commission (In re Wegfehrt),* 10 B.R. 826 (Bankr.N.D.Ohio 1981) (Chapter 7 debtor's educational loan, which comprised one per cent of her total indebtedness, discharged on basis of undue hardship where her monthly expenses exceeded her monthly income by $184.00); *New York State Higher Education Services Corp. v. Moore (In re Moore),* 4 B.C.D. 791 (Bankr.W.D.N. Y.1978) (educational loan discharged where Act "debtor's" present style of living at poverty level, e.g. "[s]he has stretched her budget by not eating").

The Debtor is still eating lunch out, driving a non-economy model car, buying presents for his relatives, and spending money on clothes and recreation. By his own admission, after paying all these "necessary" expenses, the Debtor still has almost one hundred dollars left over. This amount reflects a "residual ability" to repay his student loan, *see In re Medeiros, supra,* 86 B.R. at 286, and, in essence, affirmatively answers the "mechanical" or "economic" tier of the *Johnson* analysis against the Debtor.

Although the record does not disclose the length of the repayment term, this one hundred dollars, while short of the $144.00 monthly payment, could form the basis of a renegotiation of the Debtor's student loan. This is especially so given the short term nature of the Debtor's monthly loan obligations to Sears and Montgomery Ward, totalling sixty-four dollars. *See* Exhibits C and D. The absence of any attempt at deferral or "work-out" prior to filing for bankruptcy and again prior to commencing the instant adversary proceeding does not evidence the Debtor's good faith to repay his loan, particularly a loan that represents the second largest claim in his petition. In addition, the filing of the petition two weeks prior to the loan's first payment is suspect, even though the educational loan debt does comprise approximately fourteen per cent of the Debtor's total indebtedness and he is attempting to minimize his expenses and overcome his temporary "adversity" by living with his parents. *See, e.g., In re Albert, supra,* 25 B.R. at 101.

However, the filing of a bankruptcy petition presumes a severity of economic difficulty and offers debt relief in exchange for some sacrifices. *See In re Craig, supra,* 64 B.R. at 857. "For the purposes of 11 U.S.C. § 523, the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Briscoe, supra,* 16 B.R. at 131. Hardship that is "undue" so as to allow the dischargeability of a student loan must be long-term and does not include a "garden-variety hardship" or "unpleasantness." *In re Frech, supra,* 62 B.R. at 243 (citations omitted). *See also In re Brunner, supra,* 46 B.R. at 753.

The Court is sympathetic to the Debtor's problems and sensitive to his marital situation which he claims to have precipitated his filing. Nonetheless, the Court concludes that he will have to postpone his ambitions "to get ahead" until he can honor a debt that Congress has made a concerted choice, subject to two exceptions, *see* Code § 523(a)(8)(A) and (B), to except from discharge—his student loan debt. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.DOC. NO. 137, 93rd Cong., 1st Sess. pt. 2, at 140 & nn. 14, 15, 141 (1973) *reprinted in* L. King, COLLIER ON BANKRUPTCY, Appendix 2 (15th ed. 1988); *See also In re Lohman, supra,* 79 B.R. at 580–581; *In re Albert, supra,* 25 B.R. at 100. To find otherwise would be to offend the policy behind making such educational loan obligations nondischargeable and perhaps border on abuse of governmental loan programs at the expense of eligible and well-intentioned students. It would also give the Debtor a "head start", rather than the "fresh start" the Code provides.

Accordingly, since the Debtor, as the plaintiff, has failed to meet his burden of proof, *see In re Courtney, supra,* 79 B.R. at 1010; *In re Lohman, supra,* 79 B.R. at 578 & n. 5; *Alliger v. Pennsylvania (In re Alliger),* 78 B.R. 96, 99 (Bankr.E.D.Pa. 1987); *In re Albert, supra,* 25 B.R. at 102; *contra Armijo v. New Mexico Student Loan Program (In re Armijo),* 13 B.R. 175, 177 (Bankr.D.N.M.1981), the Court finds his student loan debt to Norstar and NYSHESC nondischargeable, in the amount due and owing when the petition was filed.

IT IS HEREBY ORDERED.