**In re Lynn Marie ERICKSON, Debtor.**

**Lynn Marie ERICKSON, Plaintiff,**

**v.**

**NORTH DAKOTA STATE UNIVERSITY and the Minnesota Higher Education Foundation, Defendants.**

**Bankruptcy No. 81–05107.**
**Adv. No. 84–7123.**

United States Bankruptcy Court, D. North Dakota.

July 18, 1985.

Cheryl Ellis, Fargo, N.D., for plaintiff.

Clifton Rodenburg, Fargo, N.D., for defendant North Dakota State University.

William J. Joanis, Minneapolis, Minn., for defendant Minnesota Higher Educ. Foundation.

WILLIAM A. HILL, Bankruptcy Judge.

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Lynn Marie Erickson (DEBTOR), commenced the instant adversary proceeding seeking a determination that student loans owing to the two named Defendants be declared dischargeable by reason of undue hardship pursuant to section 523(a)(8)(B) of the Bankruptcy Code.

The Defendant, Higher Education Assistance Foundation, a non-profit Minnesota corporation (referred to by the Plaintiff as the Minnesota Higher Education Foundation), a state agency that guaranteed seven of the loans sought discharged, objects asserting that the facts do not establish undue hardship. Co-Defendant, North Dakota State University, for itself stipulated that a discharge could be entered discharging the Debtor's student loan obligation to it by reason of undue hardship. The only remaining obligation in dispute is that owing to the Foundation.

The Debtor and the Foundation have submitted the case for decision upon a joint Stipulation of Facts. The Foundation, in its Counterclaim filed February 6, 1985, alleged the Debtor executed a series of seven notes payable to the Minnesota State Student Loan Program which in turn were assigned to it under a blanket endorsement. As of February 1, 1985, the balance was $11,375.30 with interest accruing at 7% per annum. By said Counterclaim, the Foundation seeks judgment in the sum of $11,375.50 plus interest, attorney's fees and costs. The Debtor has not replied to the Counterclaim and is in default. Accordingly, the Court makes its Findings of Fact herein based upon the joint Stipulation of Facts and, in addition, upon the allegations contained in the Foundation's Counterclaim.

## FINDINGS OF FACT

1. The Plaintiff was the recipient of certain student loans which came due for payment less than five years ago. Certain of these loans were made under the provisions of the Guaranteed Student Loan Program and were insured by a governmental unit and funded in part by a governmental unit. Defendant is responsible for collection of these loans.

2. During the years 1977 through 1981, the Plaintiff executed a series of promissory notes payable to the Order of the Minnesota State Student Loan Program, all of which were endorsed and assigned to the

Student Loan Marketing Association by the Minnesota Higher Education Coordinating Board and guaranteed by the Foundation. These loans are as follows:

a) November 22, 1977, $600.00 at 7% per annum

b) February 10, 1978, $1,500.00 at 7% per annum

c) September 29, 1978, $2,100.00 at 7% per annum

d) September 18, 1979, $1,500.00 at 7% per annum

e) November 19, 1980, $1,800.00 at 7% per annum

f) August 10, 1981, $1,000.00 at 7% per annum

g) August 31, 1981, $1,500.00 at 7% per annum

h) The foregoing notes were for educational purposes. The Plaintiff has defaulted in her obligation, and the aggregate unpaid principal and interest balance due under the notes as of February 1, 1985, was $11,375.30. Interest accrues at the rate of 7% per annum simple interest, accrued daily.

4. The Plaintiff is a single parent supporting a nine-year-old boy with serious medical problems requiring constant medication and long-term, ongoing treatment.

5. Prognosis for the Plaintiff's son foresees no likelihood that the boy's condition will improve enough to discontinue medication and treatment. The professionals treating him foresee his problems following him into adulthood.

6. The father of the Plaintiff's child is a disabled Vietnam veteran suffering severe and apparently permanent psychological problems. At one time, he paid the Plaintiff $10.00 per month child support; however, when the payments resulted in physical violence against the Plaintiff, the payments were discontinued. During the past nine or ten months, the Plaintiff has been receiving $45.00 per month from Social Security based upon the father's disability. To the best of the Plaintiff's knowledge, her child's father is permanently unable to work and is supported by Social Security disability payments and his wife's income.

7. The Plaintiff has a two-year degree in light horse management from the University of Minnesota Crookston and a bachelor of science degree in agricultural education from North Dakota State University.

8. After the Plaintiff was graduated and received her teaching certificate in the spring of 1983, she was unable to find a teaching position in any area with sufficient resources to provide adequate treatment facilities for her son.

9. At this time, the Plaintiff must secure three additional credits to be re-certified. There are no jobs advertised in her field, and she does not have the funds to take such class or classes.

10. On June 13, 1984, the Plaintiff was fired from a secretarial job with E.F. Hutton, in part because of her financial problems and bankruptcy, plus the stress from her son's continuing problems. It took slightly over a month to find another job.

11. On June 12, 1985, she was fired from her secretarial position with WDAY. Her boss had pressured her to quit a second job working 15–20 hours per week during the evening. She needed the extra income to keep up with her son's medical bills.

12. The Plaintiff has diligently searched for another job since her firing and has found very few openings and no job offers. She is competing against several hundred recent graduates from the two colleges and the University in Fargo-Moorhead.

13. The Plaintiff has been denied unemployment benefits and has appealed that decision. She is refuting the $45.00 per month child support and the income from her 15–20 hour per week minimum wage job. She has no immediate prospects for increased income.

14. The Plaintiff acknowledges that the emotional and financial strain from her son's problems has most likely affected her job performance in the past and may well do so in the future.

15. Credit counselors have advised the Plaintiff, while she was employed at WDAY, that her income was insufficient to meet her necessary obligations. Any increase, she was informed, should first go to updating the diet for her family.

16. The Plaintiff has approached Social Services for help but will not hear anything until July 18.

17. The Plaintiff's employment possibilities have been hurt by the fact that she has been fired twice since her graduation in 1983. Such a record is likely to discourage possible employers from giving her a chance, especially at responsible positions which might pay enough to cover personal and medical necessities.

## CONCLUSIONS OF LAW

The issue here is controlled by section 523(a)(8)(B) which provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(8) for an education loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

. . . . .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8)(B). Thus, the Debtor may obtain a discharge of her student loan obligations under section 523(a)(8)(B) if it can be shown that the payment of those obligations would create an "undue hardship". The burden of proof on the issue of "undue hardship" rests with the debtor. *See In re Goldman*, 48 B.R. 364 (D.C.S.D. N.Y.1985); *Shoberg v. Minn. Higher Educ. Coordinating Counsel*, 41 B.R. 684 (Bankr.D.Minn.1984); *In re Price*, 25 B.R. 256 (Bankr.W.D.Mo.1982). Although the Code itself does not define the term "undue hardship", the courts, including ours, have adopted a three-prong test in determining whether an obligation is dischargeable under the "undue hardship" standard. This test, first enunciated in *In re Johnson*, 5 BCD 532 (Bankr.E.D.Pa.1979), provides for a progressive method of analyzing the facts in a particular case. *See also Shoberg* supra.; *Cossette v. Higher Education Assistance Foundation*, 41 B.R. 689 (Bankr.D.Minn.1984); *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982). In progressive order, the tests may be termed the "mechanical test", the "good faith" test and the "policy" test. The last of these tests need only be considered by the court where the debtor meets its burden of proof with regard to the mechanical test.

The first test, termed the "mechanical test", requires that the court consider the debtor's present employment and income status, future employment and income potential, educational level and skills, health, family support responsibilities and the marketability of the debtor's skills. This test, in essence, requires a showing that the debtor's financial resources during the foreseeable future will not be sufficient to support the debtor or her dependents at a subsistence or poverty level standard of living, and still be able to repay the loan obligations.

If, from the facts, the debtor meets its burden of proof with regards to the "mechanical" test, the second element of the test is reached. Now the debtor must meet the so-called good faith test by demonstrating that she is actually minimizing her and her dependents expenses while at the same time maximizing her resources by use of her education and employment efforts. The final prong of the *Johnson* criteria is the "policy" test where the court must determine whether the debtor's attempt to discharge the loan constitutes the kind of abuse section 523(a)(8) was enacted to prevent. This analysis requires the court to infer from the facts the debtor's motivation for filing the bankruptcy petition. It has been suggested that motivation may be determined by considering the benefit the debtor derived from the student loans by

gauging what percentage of the total indebtedness they represent. *In re Albert*, supra. p. 101.

The Stipulation of Facts presented in the instant case are brief and do not address the particular elements in as complete a fashion as would be expected of one who bears the burden of proof. However, it is not for the court to prosecute a plaintiff's case, and if the debtor with advise of counsel chooses to submit a case for determination on the barest of facts, it is her right. The Debtor here is a single parent with a nine-year-old son who has chronic medical problems of an unspecified nature. No evidence of what this problem is or how much his medical treatments cost is before the court. Nor was the court presented with any evidence bearing on the Debtor's monthly income and expenses except that her income at the present is meager. From the limited facts, the court does know that the Debtor is the holder of two college degrees and recently received a teaching certificate which may be brought current with minimal refresher courses. There is no evidence as to what efforts she has undertaken to secure employment in her fields of educational expertise except that after graduation in 1983, she was unable to find a teaching position. She has recently been employed in Fargo as a secretary but was fired from her last employment for an unspecified reason. No evidence was presented regarding the prospects of employment in the fields of light horse management or agricultural education except that the Debtor feels competition will be stiff from other recent college graduates. She is presently unemployed and feels employment will be difficult because of her recent firings. No evidence was presented establishing that she has been denied employment for this reason. No evidence was presented on the question of her personal health except that her son's problems have caused her emotional strain. Presumably, she is herself able-bodied.

The evidence suggests that the Debtor is a young, college educated, single parent in good health who has present financial difficulties brought about by her son's physical ailments and her perceived inability to find any employment beyond that paying a minimum wage. The Debtor is not optimistic about obtaining employment in her chosen field, but there is no evidence suggesting that she will not be able to find such employment in the future. The existence of a temporary financial setback rendering payments difficult is certainly a hardship; but for an obligation to be dismissed for this reason, the hardship must be undue or excessive. The hardship wrought by required repayment must, from the evidence, appear extraordinary and must have been the result of circumstances beyond the debtor's control. In the case of *In re Brisco*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981), the court said "the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." In the case at bar, it is unlikely that the Debtor will never be able to find satisfactory employment in her field of education. As noted in *Panteli v. NY State Higher Educ. Services Corp.*, 41 B.R. 856 (Bankr. S.D.N.Y.1984), the mere fact a debtor is presently underemployed in a marginal job outside his chosen field does not mean he will never be able to obtain the type of employment which will permit repayment of student loans. Similar facts as now before the court caused the court in *In re Holzer*, 33 B.R. 627 (Bankr.S.D.N.Y.1983) to comment:

"... [I]t is implausible that plaintiff, a highly educated individual with no physical or mental infirmity cannot obtain *any* gainful employment whatsoever, albeit such employment may be in fields for which he has received no formal training. Accordingly, this Court cannot accept plaintiff's contention that he will never be in a position to repay his student loan indebtedness. If plaintiff wishes to limit his employment search solely to those fields for which he received formal training, he has made an irresponsible decision so to limit himself and, accordingly, any resulting hardship is of his own mak-

ing, self-imposed, and does not constitute "undue hardship" ..."

*In re Holzer*, 33 B.R. at 632. The Debtor's situation is not unlike that of many other single parents except that she is well-educated and her son has a physical ailment of some kind. The evidence suggests that she, although young, educated and relatively without responsibilities, has done little to maximize her opportunities, choosing instead to find the easy way out through bankruptcy and reliance upon various welfare agencies.

The Debtor's schedules reveal total debts of $17,862.00 of which $15,550.00, or 87%, consist of student loans. Thus, the court must conclude that the principal motivation for filing the petition was to eliminate these student loan obligations. The court believes from the facts, skimpy as they are, that the Debtor's current employment and income levels would not permit repayment of the loans in question, but her income prospects in view of her educational level are far brighter than one might be led to believe. Accordingly, the court believes that given the Debtor's education, she could with greater effort to secure employment meet her obligations in the future without reducing the minimal standard of living for her or her son. The Debtor's burden of proof on the threshhold "mechanical" test has not been met. Furthermore, even if the court were to conclude that the mechanical test had been met, it would have to conclude that the Debtor has failed in her burden with regards to the "good faith" test. The Debtor is a comparatively recent graduate and, in the short span of time since her graduation, can hardly be classified as a career failure. The facts do not show that she has maximized her effort to either find employment or to become as fully employed as possible.

Accordingly, and for the reasons stated, judgment may be entered as follows: 1) Pursuant to Stipulation, the liability of Lynn Marie Erickson to the Defendant, North Dakota State University, is discharged; 2) the Plaintiff's Complaint against Defendant Higher Education As-

sistance Foundation is dismissed; 3) the indebtedness of Lynn Marie Erickson in the sum of $11,375.30 plus interest at the rate of 7% per annum owing to Higher Education Assistance Foundation is non-dischargeable under section 523(a)(8)(B).

IT IS SO ORDERED.