**In the Matter of Paul E. MARION, Jr. and Diane M. Marion, Debtors.**

**Paul E. MARION, Jr., Plaintiff,**

**v.**

**PENNSYLVANIA HIGHER EDU-CATION ASSISTANCE AGENCY, Defendant.**

**Bankruptcy No. 83–1634.
Adv. No. 85–616.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 30, 1986.

---

Bart J. Tyson, Pittsburgh, Pa., for plaintiff.

Jane G. Malatesta, Killian & Gephart, Harrisburg, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before this Court is a Complaint to Discharge an educational loan pursuant to 11 U.S.C. § 523(a)(8)(B). Based upon the testimony presented and the applicable law, we find that the debt is not discharged.

The Plaintiff, Paul E. Marion, Jr., was discharged under § 727 of the Bankruptcy Code on November 28, 1983. There remains outstanding, an educational loan held by the Pennsylvania Higher Education Assistance Agency (hereinafter "PHEAA") in the amount of $2,417.97, including principal and accrued interest thereon.

Mr. Marion claims that repayment of this debt would cause an undue hardship upon him and his family, and therefore, requests that the Court hold this debt to be discharged.

The following information has been adduced from testimony delivered by Mrs. Marion, the Plaintiff's wife, who testified in her husband's behalf.

1. Mr. Marion has been employed by Conrail for the last eight (8) years, with intermittent layoffs. Mr. Marion has been able to procure other jobs during those layoff periods.

2. The job with Conrail temporarily requires Mr. Marion to work in Springfield, Massachusetts. He travels to his job each Sunday, works four 10-hour days, and returns home each Thursday.

3. Mr. Marion's gross weekly wage is $530.40, for a monthly gross exceeding $2,121.60. He avers his monthly net pay approximates $1,423.32.

4. The following is a compilation of the money which Mr. Marion claims to be expending each month:

| A. | Springfield Expenses | |
|----|----|----|
| a) | travel (gas) | $ 200.00 |
| b) | lodging | 400.00 |
| c) | food | 200.00 |
| B. | Home Expenses | |
| a) | rent | $ 300.00 |
| b) | food | 250.00 |
| c) | insurance | 35.00 |
| d) | utilities | 50.00 |
| e) | clothing | 25.00 |
| f) | medical | 100.00 |

5. The total monthly expenditures claimed is $1,560.00, or almost $150.00 more than Mr. Marion's monthly net income. Given this discrepancy, and receiving no testimony as to other sources of income, the Court must assume that these figures are somehow in error.

6. Mr. Marion has a wife and two children; a nine-year old son and a seventeen-year old daughter. The daughter is unmarried and pregnant.

7. Mrs. Marion is able to work but does not. She is presently having extensive dental work done, and testifies that she is highly self-conscious of her communications with other people. In spite of the witness's testimony the Court found her to be intelligent and communicative and at the very least, able to bring income into the family budget.

The dentist, who is presently owed $4,500, will not build the necessary lower plate until the back balance is paid. The $100.00 per month medical allocation is budgeted for the dentist's repayment.

■ The factors involved in determining "undue hardship" are thoroughly examined in *In re Johnson*, 5 B.C.D. 532 (Bkrtcy.E.D.Pa.1979). In that case, the Court first made it clear that the language chosen by the drafters of the Code, *"undue* hardship" indicates that the type of hardship involved in a particular circumstance must be significant, not merely general difficulty. The total amount of income must be inadequate to both maintain Mr. Marion and his family

at a minimal standard of living and repay his educational loan.

■ Furthermore, in calculating the ability of the Plaintiff to repay this loan, we must consider the longest allowable repayment period, which is ten (10) years, and the corresponding lowest amounts of repayment. PHEAA has agreed to accept monthly payments of $30.00.

In order to measure the hardship facing Mr. Marion and his family, we must compare his future financial resources to his expenses. In determining Mr. Marion's future financial resources, we examine several factors.

First and foremost, is his present rate of pay. This is a clear and obvious indication of what Mr. Marion will earn in the future. While the testimony does admit that his employment with Conrail is always subject to periodic layoff, Mr. Marion has proved that he has been able to secure other substantial employment to meet his expenses during those intervals. This testimony also shows that Mr. Marion has the ability to obtain and retain employment, another of the factors used to measure undue hardship. Mr. Marion has shown that he possesses a solid work history, and has a skill for which he is given good compensation.

Mr. Marion has offered no testimony as to his health. However, as his position with Conrail entails a good deal of physical labor, we must assume his health is good, and there is no presently apparent reason why it would not remain so during the next ten years.

The Plaintiff has shown himself to be significantly mobile, in that he has been willing to take a job a great distance from his home and family. This is to his credit, as it shows he is making a good faith effort to provide for his family.

However, upon analyzing the Plaintiff's expenses, the Court must state that they do not all appear to be incurred in a reasonably prudent manner. It is appropriate that Mr. Marion shares traveling expenses for his trips to Springfield with another individual. However, it is difficult for the Court to understand why the "work maintenance expense" cannot be reduced somewhat so as to provide modest payment to Defendant herein. The Plaintiff must be willing to forego some of his less than prudent expenditures in order to be a responsible borrower.

We also note that Mrs. Marion is not employed outside the home, and is presently self-conscious about her dental condition. However, Mrs. Marion is capable of holding some type of job even if it be for the minimum wage. It is partly her responsibility to assist in the support of her family. Jobs can be found which require little or no public contact and for which she need not feel quite so self-conscious.

In looking at the expenses incurred, we must also examine, as reasonably as we can, the future expenses of the Marion family. Initially, we expect that it will not be necessary for Mr. Marion to commute to Springfield for an extended period of time. Certainly, if it appeared that this present job would be long-term in nature, it would be incumbent upon Mr. Marion to move his family to the Springfield area. Such a consolidation of expenses would give the family more than enough money on which to live. Likewise, if Mr. Marion's job brings him back home, his expenses for living in Springfield will disappear.

Additionally, during the next ten years, it is to be expected that Mr. Marion's daughter will become an independent individual, living on her own, or at the very least, will have obtained some form of employment with which to supplement the family income.

The Court is mindful that the Marions' present expenses are substantial. However, theirs is certainly not a hopeless situation. Mr. Marion is a healthy man who earns a reasonably healthy income. There are portions of their present expenditures which must be reduced. However, more importantly, their future outlook is far from bleak. Once the family is reunited, whether it be in Springfield or here, a significant amount of their expenditures

will have dissipated and they will be able to meet all of their obligations.

This Court has determined that Mr. Marion is *not* in an "undue hardship" situation. To meet that standard, the difficulties of the borrower must be such that, in looking ten years into the future, there appears no hope of an improved financial picture.

The policy considerations behind such a standard are compelling. PHEAA exists in order to provide worthy individuals with an opportunity to obtain an education which they would otherwise be unable to afford. The idea behind such assistance is to offer the individual a higher standard of living than he or she would be able to obtain without it. If those individuals, so assisted, do not make remuneration for this service, the funds may not be available to lend to another individual, who is equally in need of such assistance. The system is self-perpetuating. If it is made too easy to discharge this obligation, the fund will eventually cease to benefit those who need it most. This is one obligation which the Court will not permit Mr. Marion to discharge.

An appropriate Order will be issued.