In re Joseph E. ZIBURA and Susan E. Zibura, Debtors.

Joseph E. ZIBURA, Plaintiff,

v.

ACADEMIC FINANCIAL SERVICES ASSOCIATION; USSCO Johnstown FCU; and Pennsylvania Higher Education Assistance Agency, Defendants.

Bankruptcy No. 90–2061–BM.
Adv. No. 90–0447–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 29, 1991.

K. Kevin Murphy, PHEAA, Harrisburg, Pa., for defendants.

Edward R. Schellhammer, Johnstown, Pa., for debtors.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Joseph E. Zibura has brought the above-captioned adversary action seeking determination that two (2) education loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8). He maintains that excepting the two loans from discharge would impose an undue hardship upon him and his family.

The Court finds, in accordance with the reasoning set forth below, that the two debts at issue are *not* dischargeable.

### I

### FACTUAL BACKGROUND

Debtors Joseph E. Zibura and Susan E. Zibura, husband and wife, filed a voluntary Chapter 7 petition on July 11, 1990. A total of $19,461.19 in debt, all of it unsecured, was listed by debtors. They listed an education loan in the amount of $1,110.00 from defendant Academic Financial Services Association; an education loan in the amount of $7,500.00 from defendant USSCO Johnstown FCU; various open charge accounts totaling $8,661.19; and a personal loan in the amount of $2,200.00 from Catherine Stupi for the purchase of an automobile. Debtors also listed a total of $5,471.49 in personal property, all of which was claimed as exempt. The Chapter 7 trustee filed a report of no assets in the case on September 12, 1990.

Mr. Zibura is the sole source of support for the family. Mrs. Zibura has chosen not to be employed. Debtors have three (3) children, all of whom attend school during the day. Mr. Zibura is also the father of another child, and contributes $150.00 per month in child support pursuant to a court order.

Mr. Zibura previously had been employed at United States Steel Corporation in

Johnstown, Pennsylvania, until he was permanently laid off in August of 1981. He collected unemployment compensation for approximately two (2) years and then received public assistance benefits for himself and his family until 1989.

Mr. Zibura underwent various types of training in order to find gainful employment. He graduated from barber school in 1985 but determined not to find work as a barber. He then took course work to be a nurse's aide in 1986 but again determined not to find employment as a nurse's aide.

In 1986, Mr. Zibura undertook a course of study in occupational therapy at Mt. Aloysius Junior College. It was during this time that debtor incurred the two debts at issue to complete his course of study. Mr. Zibura graduated in May of 1988 as an occupational therapy assistant. He then completed various internships after graduating and became a licensed occupational therapy assistant.

In November of 1989, debtor obtained employment as a licensed occupational therapy assistant at City–County Clinic in Johnstown, Pennsylvania.

On September 17, 1990, Mr. Zibura obtained his present employment as a licensed occupational therapy assistant at Warren State Hospital in Warren, Pennsylvania. Because Warren State Hospital is approximately 150 miles from the family residence in Beaverdale, Pennsylvania, Mr. Zibura maintains a second residence for himself in Warren, Pennsylvania. He communicates with his family by telephone virtually every day and returns to Beaverdale every weekend to be with the family.

Mr. Zibura's gross monthly salary from his job, as of March 15, 1991, was $1,514.93. He advises that his net monthly income, which includes $120.00 in food stamps, is $1,187.41.

Debtor's monthly expenses, which total $1,388.00, contain the obvious necessities, but also include a stipend for two residences, a $60.00 per month telephone bill, cable TV, $150.00 per month transportation expense, and $50.00 per month for books, magazines and recreation. In addition, debtors pay close relatives $40.00 per month in relocation expenses. Were debtors to offer to pay defendant a sum comparable to any of the above as a payment on the debt in question, the court is led to believe said payment would be acceptable.

## II

### ANALYSIS

Debtor seeks to have the indebtedness arising out of his student loans held dischargeable under the exception set forth at 11 U.S.C. § 523(a)(8)(B), which provides in pertinent part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

When it is the debtor bringing a complaint to determine dischargeability under the "undue hardship" exception, the burden of proof is split between the parties as to issues. *Matter of Coleman*, 98 B.R. 443, 446 (Bankr.S.D.Ind.1989).

The creditor has the initial burden of proving the existence of the debt; that it is owed to or insured or guaranteed by a governmental agency or non-profit institution of higher education; and that it first became due less than five (5) years prior to the date the bankruptcy petition was filed. *Matter of Coleman*, 98 B.R. at 447 (*citing In re Norman*, 25 B.R. 545, 548 (Bankr.S.D.Cal.1982)).

The burden of proof as to "undue hardship" is on the debtor. *Binder v. U.S. Dept. of Education*, 54 B.R. 736, 739 (Bankr.D.N.D.1985). This is so because a claim of undue hardship is in the nature of an affirmative defense or an exception to

the exception of such a debt from discharge. *Matter of Coleman*, 98 B.R. at 447.

Mr. Zibura does not now dispute that he owes debts which were guaranteed by governmental agencies and which became due less than five (5) years prior to the date on which he filed his Chapter 7 petition. Consequently, the burden is upon debtor to prove "undue hardship" if he is to prevail in this action.

■ "Undue hardship" is not defined in the Code. It is a term of art to be interpreted in the discretion and judgment of the court. Whether undue hardship would occur is a question of fact which is to be determined on the basis of the particular circumstances of each case. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981).

■ The fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception when one files for bankruptcy. *U.S. v. Collier (In re Collier)*, 8 B.R. 909, 911 (Bankr.S.D.Ohio 1982). Undue hardship is not established by proof that repayment of a student loan would merely bring about unpleasantness or garden variety hardship. *Lezer v. New York State Higher Education Services Corp. (In re Lezer)*, 21 B.R. 783, 787 (Bankr.S.D.N.Y.1982). More than present inability to repay is required to establish undue hardship. *Abrams v. Univ. of Nebraska at Lincoln (In re Abrams)*, 19 B.R. 64, 66 (Bankr.D.Neb.1982).

Several courts have adopted a tripartite test for determining whether a debt is dischargeable due to undue hardship. The test, first set forth in *In re Johnson*, 5 BCD 532 (Bankr.E.D.Pa.1979), sets forth a sequential procedure for analyzing the facts of a given case. *In re Erickson*, 52 B.R. 154, 157 (Bankr.D.N.D.1985) (citations omitted).

■ The tests may be termed, in order, the mechanical test, the good faith test, and the policy test.

The mechanical test, in essence, requires a debtor to show that his financial re-

sources in the foreseeable future will not be sufficient to enable that debtor to support himself and his dependents (if any) at a subsistence level while the debtor repays the debt obligation. *In re Erickson*, 52 B.R. at 157. The court is required, at this stage of analysis, to consider such factors as debtor's present employment and income, future employment and income potential, educational level and skills, the marketability of those skills, debtor's health, and debtor's family support responsibilities. *In re Johnson*, 5 BCD at 537–540.

■ Educational loans usually are repaid in small monthly payments over a relatively long period of time, typically ten (10) years. On some occasions defendant has accepted payments as low as $10.00–$20.00 per month until a debtor's lot improves. Consequently, a debtor generally must show that his financial situation will not permit a small payment and is unlikely to improve over the next ten (10) years or so. *In re Bey*, 95 B.R. 376, 378 (Bankr.W.D.Pa.1989).

If the debtor fails to make the showing required under the mechanical test, discharge of the debt in question must be denied. If, however, debtor does make such a showing, the court then must proceed to the second stage of analysis. *In re Johnson*, 5 BCD at 544.

The second stage of analysis is reached if and only if the debtor has met his burden of proof with respect to the so-called "mechanical" test. Assuming that repayment of the loan would result in the requisite "undue hardship", discharge still must not be granted unless the debtor has made a "good faith attempt" to repay the loan. *In re Johnson*, 5 BCD at 540. A court must, when considering the matter, determine:

(1) whether the debtor has made a bona fide attempt to find a good-paying job;

(2) whether the debtor has made a sincere attempt to maximize his financial resources; and

(3) whether the debtor has been careful to minimize expenses.

*In re Johnson*, 5 BCD at 541.

■ The third and final phase of analysis is the "policy" test, which requires the court to ascertain whether debtor's attempts to discharge the loan constitutes the sort of abuse which § 523(a)(8)(B) was enacted to prevent. *In re Johnson*, 5 BCD at 542. This analysis requires the court to infer debtor's motivation in filing the bankruptcy petition. Debtor's motivation may be ascertained by determining the benefit debtor derived from the loans by gauging what percentage of the total indebtedness they represent. *In re Albert*, 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982). This final phase need be considered by the court only if the debtor has met his burden of proof under the "mechanical" test. *In re Erickson*, 52 B.R. at 157.

■ Mr. Zibura has failed to meet his burden of proof. To begin with, he has not satisfied the "mechanical" test described previously. The fact that Mr. Zibura's *present* financial resources are not sufficient to meet all of his current monthly budget and to repay his student loans at the same time is not dispositive. *In re Abrams*, 19 B.R. at 66. As has been noted, factors such as debtor's future employment and income, educational level and skills, the marketability of those skills, and debtor's family support obligations also relevant. *In re Johnson*, 5 BCD at 534–40.

There is ample reason to believe that Mr. Zibura's *future* financial condition will improve and that he will be able to pay his student loans without undue hardship. His pessimistic testimony that his salary will not increase in future years is not credible. Mr. Zibura has marketable skills. Moreover, he began his new career as a licensed occupational therapy assistant only a short time ago. He can reasonably expect to receive future promotions with commensurate increases in salary.

Mr. Zibura's failure to satisfy the "mechanical" test mandates that the two student loans at issue here are *not* dischargeable. *In re Johnson*, 5 BCD at 544. However, the outcome would be the same even if he had satisfied this test because he has not made a good faith effort to repay the loans. Specifically, Mr. Zibura has not taken sufficient steps to minimize his expenses. *In re Johnson*, 5 BCD at 541.

Debtors maintain two residences, one for Mr. Zibura at his place of employment in Warren, Pennsylvania, and another for Mrs. Zibura and their three children in Beaverdale, Pennsylvania. Also, Mr. Zibura telephones his family virtually every day and travels some 300 miles every weekend to visit his family. It is reasonable to infer that much of the $60.00 monthly phone bill and virtually all of the $170.00 spent every month on transportation and automobile maintenance are largely attributable to their decision to maintain two residences. The costs associated with maintaining two residences are understandably high and undoubtedly are greater than would be incurred if debtors maintained a single residence near Mr. Zibura's place of employment. No convincing explanation was provided for why debtors persist in this practice. In the absence of any convincing explanation, it can only be concluded that debtors are not making their best effort to minimize their expenses.

Debtors' budget also contains items which would not be considered outlandish if enjoyed by a citizen who is able to support his family as well as pay his debts. However, in the case at hand debtor has discharged generally his debts. He now desires relief from debts that Congress has placed in a special nondischargeable category. Clearly debtors' budget must be cut further before the special debt is determined to be an "undue hardship".

In addition, debtors have not made a sincere attempt to maximize their financial resources. *In re Johnson*, 5 BCD at 541. There is no apparent reason why Mr. Zibura has to be the sole provider for himself and his family. Mrs. Zibura, also a debtor in this bankruptcy case, is in good health but does not work. Debtor's three children, although young, attend school during the day. Debtors have decided for reasons known only to themselves that Mrs. Zibura should not find gainful employment, even if

only on a part-time basis, in order to supplement the family's income. Their voluntary decision is startling in light of the fact that debtors claim that their current monthly expenses exceed current monthly net income by approximately $200.00.[1] Although this decision is for debtors to make for themselves, it would be inappropriate for them to make that decision at the expense of defendants in this case.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 29th day of May, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the debts owed by Debtor/Plaintiff Joseph E. Zibura to Defendants Academic Financial Services Association, USSCO Johnstown FCU, and Pennsylvania Higher Education Assistance Agency are NOT DISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(8).

1.  There is reason to believe that debtors' necessary expenses are not as great as is claimed. For instance, Mr. Zibura testified that he spends $20.00 per month to pay a *post-*petition personal loan in the amount of $2,300.00 from an unidentified aunt for the purchase of an automobile. The schedules attached to debtors' bankruptcy petition casts doubt upon this testimony. Debtors list on Schedule A–3 a personal loan in March of 1990, some four (4) months prior to the filing of the bankruptcy petition, a personal loan in the amount of $2,200.00 from Catherine Stupi for the purchase of an automobile. If this information is accurate, the debt is dischargeable pursuant to 11 U.S.C. § 727(a). If debtors are repaying the loan when they are not obligated to do so, it is not a necessary expense.