**In re Robert E. KOCH, Debtor.**

**Robert E. KOCH, Plaintiff,**

v.

**PENNSYLVANIA HIGHER EDU-CATION ASSISTANCE AGENCY; Illinois Student Assistance Commission; Temple University; and Loyola University of Chicago, Defendants.**

Bankruptcy No. 91–0703–BM.
Adv. No. 91–0376–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 3, 1992.

· P. Andrew Diamond, Lewis & Stockey, Pittsburgh, Pa., for plaintiff/debtor.

K. Kevin Murphy, PHEAA, Harrisburg, Pa.

David J. Hershman, Chicago, Ill., for defendant/Illinois Student Assistance Com'n.

Edward L. Berger, Gordin & Berger, Philadelphia, Pa., for defendant/Temple University.

Ronald F. Talarico, Pittsburgh, Pa., for defendant/Loyola University.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a *Complaint To Determine Dischargeability Of Student Loan Debts* filed by plaintiff Robert E. Koch ("debtor"), wherein debtor seeks to have four (4) education loans discharged pursuant to 11 U.S.C. § 523(a)(8)(B). Debtor avers that excepting the loans from discharge would impose "undue hardship" upon him and his family.

For the reasons set forth below, the court finds that the four student loan debts are not dischargeable.

### -I-

### FACTUAL BACKGROUND

From September 1980 until May 1984, debtor attended Washington and Jefferson University, where he earned a Bachelor of Science Degree in biology. A substantial portion of his education at this institution was financed through student loans guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA").

In September of 1984, debtor enrolled in dental school at Temple University ("Temple") in Philadelphia, Pennsylvania. A substantial portion of his education at Temple was financed through student loans guaranteed by PHEAA and Temple. Temple terminated debtor's enrollment after approximately two and one-half (2½) years. Although debtor was promoted to his junior year, he had failed to properly complete the required dental studies between his second and third years.

Debtor moved to Pittsburgh, Pennsylvania shortly after his termination at Temple.

He sought employment for which he could use his biology degree, but ended up working at odd jobs. During this time, he also applied to various dental schools. Debtor then moved back to Philadelphia for a period of time.

Debtor eventually was accepted to Loyola University ("Loyola") dental school in Chicago and began classes there in September of 1988. He financed his education at Loyola through student loans which were guaranteed by PHEAA, Loyola, and the Illinois Student Assistance Commission ("Commission"). Debtor was asked to leave Loyola in November of 1989 after he was caught stealing from a campus bookstore.

Debtor borrowed a total of $32,916.75 from PHEAA; a total of $10,253.88 from Loyola; a total of $1,569.69 from Commission; and a total of $2,914.14 from Temple. In all, he borrowed a total of $47,654.46 from these entities. In addition, debtor owes the Unites States Government $59,730.27 for a Health Education Assistance Loan ("HEAL"), and $1,751.00 to unsecured creditors. The HEAL debt, however, is nondischargeable irrespective of the outcome of this adversary proceeding.

Debtor moved from Chicago to Pittsburgh in February of 1990 and sought employment as a biologist. After a short period of working at odd jobs, debtor found employment as a dental assistant. Although the skills he had learned in dental school were helpful in this employment, they were not a prerequisite to obtaining this employment.

In November 1990, debtor attained steady employment as an environmental health specialist for the Allegheny County Health Department, with working hours from 8:30 a.m. to 4:30 p.m. A prerequisite for employment as an environmental health specialist was his biology degree. Debtor continued to work part-time as a dental assistant for a short while after beginning his job with Allegheny County. Debtor testified that the dentist for whom he worked eventually terminated these part-time hours.

Debtor filed a voluntary chapter 7 petition on March 7, 1991.

Debtor's wife is employed as a nutrition specialist for Nutri–System. Her earnings are relevant because debtor's budget includes sums utilized for her support. She initially worked thirty-four (34) hours per week at $6.75 per hour, but her hours were cut back to thirty (30) hours per week. Debtor and Mrs. Koch testified that they had a combined gross monthly income of approximately $2,100.00, with an estimated monthly net income of $1,900.00. Their combined income remained at this level until October of 1991.

Mrs. Koch borrowed money and traded in her car for a new Ford Tempo in April of 1991. The bank extended the loan based solely on her credit history and income, and the title was in her name only. Although debtor and Mrs. Koch were not yet married at the time of the car purchase, they nonetheless resided together and incurred the $230.00 per month car payment as a household expense. Moreover, it is significant to note that in the month prior to the purchase of the car, debtor filed his voluntary chapter 7 petition. Mrs. Koch was well aware of debtor's financial situation when she purchased the car.

In October of 1991, Mrs. Koch temporarily stopped working for approximately six (6) months for reasons related to her pregnancy. Debtor became the sole source of income in the household.

A child was born to this couple on January 2, 1992. Debtor's health insurance, provided by his employer, covered all of the childbirth expenses. Mrs. Koch has returned to work part-time since giving birth; however, she advises that she lost her seniority because of her pregnancy. She initially worked a total of eight (8) hours per week at $8.15 per hour but now works a total of twelve (12) hours per week, with the possibility of adding an additional four-hour shift. Mrs. Koch volunteered that she has not sought either full time employment or additional part-time employment. Debtor also has volunteered that he has not sought additional part-time employment. Debtor admits, however, that he is qualified to work as a dental lab technician.

Debtor testified that he currently nets $538.10 on a bi-weekly basis, or $1165.88 monthly. In addition, Mrs. Koch now earns approximately $400.00 per month net income, for a total net monthly household income of $1,565.00. Little information was offered detailing their deductions from gross pay. Debtor submitted a budget which listed total monthly expenses of $1,457.00. Included in those expenses was a recreation allowance of $60.00 per month, as well as $140.00 per month for transportation, which included an account for work-related travel. Debtor, however, is reimbursed by his employer, Allegheny County, for much of his work-related travel. Moreover, car insurance was listed separately from the transportation allowance. Another expense listed was $70.00 per month for the telephone calls debtor and Mrs. Koch frequently make to Philadelphia, New York, and Chicago.

-II-

## ANALYSIS

Debtor seeks to have his education loans discharged pursuant to 11 U.S.C. § 523(a)(8)(B), which provides as follows:

(a) A discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

When a debtor seeks to have education loans discharged pursuant to § 523(a)(8)(B), the "undue hardship" exception, the burden of proof splits between the creditor and the debtor. *Matter of Coleman*, 98 B.R. 443, 446 (Bankr.S.D.Ind.1989).

■ The creditor must show the following: (1) the existence of the debt; (2) the debt was owed to, insured, or guaranteed by a governmental agency or non-profit institution of higher education; and (3) the debt first became due less then five (5) years prior to the date the bankruptcy was filed. *Id.* at 447 (*citing In re Norman*, 25 B.R. 545, 548 (Bankr.S.D.Cal.1982)).

■ The debtor must prove that repayment of the debt imposes an undue hardship. *In re Zibura*, 128 B.R. 129, 131 (Bankr.W.D.Pa.1991) (citing *Binder v. U.S. Dept. of Education*, 54 B.R. 736, 739 (Bankr.D.N.D.1985). "This is so because a claim of 'undue hardship' is in the nature of an affirmative defense or an exception to the exception of such a debt from discharge." *Matter of Coleman*, 98 B.R. at 447.

In the case at hand, debtor does not dispute that he owes debts guaranteed by PHEAA and Commission, governmental agencies, and Temple and Loyola, each of which is a non-profit institution of higher education. Debtor also does not dispute that his education loans became due less than five (5) years prior to the time he filed his chapter 7 bankruptcy petition. Accordingly, debtor has the burden of proving that repayment of his education loans would visit an "undue hardship" upon him.

■ "Undue hardship" is not defined in the Code. *In re Zibura*, 128 B.R. at 132. Rather, "undue hardship" is a term of art which the court interprets in its discretion. *Id.* Whether "undue hardship" exists is a question of fact to be determined by the particular facts of each case. *Id.*

■ "Undue hardship is not the same as severe financial difficulty." *Craig v. Pennsylvania Higher Education Assistance Agency*, 64 B.R. 854, 857 (Bankr. W.D.Pa.1986). Any debtor who is forced to file a bankruptcy petition can expect to suffer severe financial difficulties. A tight budget and hardship are unfortunate realities confronting any individual in bankruptcy. "To prove 'undue hardship', one must be suffering from truly severe, and even uniquely difficult circumstances." *Id.*

■ This court has adopted the triparte test set out in *In re Johnson*, 5 BCD 532 (Bankr.E.D.Pa.1979) for determining whether a debt should be discharged because a debtor would otherwise suffer "undue hardship". The test consists of the following: the mechanical test; the good faith test; and the policy test.

■ The mechanical test looks to a debtor's financial circumstances. Repayment of education loans visits "undue hardship" only if the debtor's income is inadequate to maintain the debtor and any dependents at a subsistence level while repaying the loans. *Matter of Marion*, 61 B.R. 815, 816–17 (Bankr.W.D.Pa.1986). The court looks to the following factors when determining the adequacy of a debtor's income for loan repayment:

(1) Present employment and income;

(2) Future employment and income potential;

(3) Educational level and skills;

(4) Marketability of those skills;

(5) Debtor's health;

(6) Debtor's family support responsibilities.

*In re Johnson*, 5 BCD at 537–40.

■ Education loans are typically repaid over a period of ten (10) years, a significant period of time. *In re Zibura*, 128 B.R. at 132. Moreover, PHEAA has a history of flexibility with regard to repayment. PHEAA has allowed payments as low as $10.00 per month until the debtor's financial circumstances improve. *In re Kobulnicky*, 64 B.R. 315, 316 (Bankr.W.D.Pa. 1986); *see also, In re Zibura*, 128 B.R. at 132. Therefore, debtor must show that (1) his or her financial situation will not permit a small payment; and (2) that his or her financial situation is unlikely to improve over the next ten (10) years. *In re Bey*, 95 B.R. 376, 378 (Bankr.W.D.Pa.1989).

If a debtor fails to meet the burden of proof under the mechanical test, the court must deny discharge of the debt. If the debtor meets the necessary burden of proof, the court must proceed to the good faith test. *In re Johnson*, 5 BCD at 544.

 The good faith test assumes that the mechanical test has been met. *In re Zibura*, 128 B.R. at 132. However, a court may still refuse to discharge the debt on the basis of "undue hardship" if the debtor has not made a "good faith attempt" to repay the loan. *Id. (citing In re Johnson*, 5 BCD at 540). The following three factors are to be considered under the good· faith test:

(1) whether the debtor has made a bona fide attempt to find a good-paying job;

(2) whether the debtor has made a sincere attempt to maximize his financial resources; and

(3) whether the debtor has been careful to minimize expenses.

*In re Johnson*, 5 BCD at 541.

 The final test the court applies is the "policy" test. Again, this test need only be applied "if the debtor has met his burden of proof under the 'mechanical' test". *In re Erickson*, 52 B.R. 154, 157 (Bankr.D.N.D.1985). Under the policy test, the court must determine whether the debtor's attempt to discharge the loan constitutes the sort of abuse which § 523(a)(8)(B) was enacted to prevent. *In re Johnson*, 5 BCD at 542. In order to accomplish this, the court must determine the debtor's motivation for filing the bankruptcy petition. If the intent is to merely lighten the load then the burden is not undue and is not dischargeable. If the intent is to avoid falling below the subsistence level then it may be dischargeable. The court should also ask whether the education gained by the debtor enhanced the debtor's earning capacity. *In re Coleman*, 98 B.R. at 449; *In re Zibura*, 128 B.R. at 133 (citing *In re Albert*, 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982)).

 In the case at hand, debtor has failed to meet the "mechanical" test. Debtor's income combined with his wife's income is sufficient to maintain debtor, Mrs. Koch, and their daughter at a subsistence level. *Matter of Marion*, 61 B.R. at 816–17. The budget submitted by debtor listed total monthly expenses of $1,457.00. Debtor testified that his monthly income approximates $1,165.00. In addition, Mrs. Koch, whose needs are met by the budget expenditures, testified that her net monthly income approximates $400.00. These amounts add up to a monthly net income which is sufficient to maintain a lifestyle above the subsistence level and, in addition, to make a payment to reduce nondischargeable debts.

In addition, debtor has encouraging future employment and income prospects. He can expect to receive raises from the Allegheny County Health Department over the next few years. Debtor also has acquired valuable work experience which should enable him to find a better paying job in the field of biology. His four (4) years of dental school enhances the income potential derived from debtor's degree in biology. While the two may not necessarily complement each other in the context of debtor's current job, the dental school education does allow debtor to seek additional employment as a dental lab technician. Health-related skills, such as those in dentistry, are in great demand in the current marketplace, especially in the Pittsburgh area. Even individuals with degrees only in biology are in demand in the health-related fields.

Debtor is in good health. He suffers from no ailment which prevents him from working at his current job or from seeking additional part-time employment. Mrs. Koch is also in good health and capable of contributing to the household income. Debtor and his dependents are covered by comprehensive health insurance provided by debtor's employer. Thus, there is little risk of the household being saddled with medical bills in the event a member of the household becomes ill.

Debtor does have family support obligations. However, as has been noted, he is capable of meeting those support obligations and his debt obligation to PHEAA, Temple, Loyola, and the Commission. Mrs. Koch, whose needs are met by budgetary expenditures, is also capable of contributing to the household income and alleviating some of debtor's support obligation and

allowing small payments on debtor's school loans.

Because debtor must generally show that 1) his or her financial situation will not permit a small payment; and 2) his or her financial situation is unlikely to improve over the next ten years or so, debtor fails to meet the burden of proof under the "mechanical" test. *In re Bey*, 95 B.R. at 378.

Because debtor fails to meet the "mechanical" test, the education loan debt is nondischargeable. *In re Johnson*, 5 BCD at 541. The court is not required to consider the "good faith" and "policy" tests if the debtor fails to meet the "mechanical" test. *Id.* However, in the interest of thoroughness, the court will discuss these second and third stages of analysis.

■ Assuming, *arguendo*, that the "mechanical test" has been met, a court may still refuse to discharge a debt on the basis of "undue hardship" if the debtor has not made a good faith attempt to repay the loan. *In re Johnson*, 5 BCD at 540. In the instant case, debtor apparently made bona fide efforts to find a good-paying job. *Id.* His resume shows that he actively sought career-oriented employment. Debtor's testimony reveals that he varied his resume depending upon the particular market he was targeting. This shows that debtor did not restrict himself to a particular field or market while seeking employment. Moreover, while he looked for gainful employment, debtor worked at various odd jobs in order to avoid unemployment altogether.

Debtor, however, has failed to maximize his financial resources. The court realizes that debtor feels obligated to spend time with his new family; however, he also has an obligation to repay his debts. Although debtor is fully aware of his difficult financial situation, he is not currently seeking part-time employment to supplement his income. Mrs. Koch has three scheduled shifts per week at Nutri–System. During the time Mrs. Koch works, debtor is obviously responsible for caring for their child. However, it stands to reason that debtor could work part-time in the evenings when Mrs. Koch does not have to work. Working part-time two (2) or three (3) nights per week would allow debtor to make small payments on his debts, and still afford him time to spend with his family.

Debtor has also failed to minimize expenses. First, debtor's budget indicates an expense for recreation at $60.00 per month. Such an allowance probably would be considered reasonable for a non-bankruptcy debtor. However, such an item can not be approved and deemed appropriate at the expense of creditors and/or the taxpayers. Second, debtor's household spends $70.00 per month on telephone calls. Debtor and Mrs. Koch understandably wish to communicate with their families. However, fewer calls for shorter periods of time would substantially lower debtor's monthly telephone bills. Third, the budget debtor submitted listed $140.00 per month in transportation expenses. Debtor stated that included in the $140.00 figure was work-related travel. The Allegheny County Health Department reimburses debtor for a substantial portion of the expense that he lists. Debtor's monthly transportation budget therefore requires a downward revision. Finally, debtor's household pay $230.00 per month for a car Mrs. Koch purchased in April of 1991. Mrs. Koch purchased this car for $10,000.00 after debtor had filed his chapter 7 petition the previous month. Mrs. Koch was therefore aware of debtor's financial condition. Although debtor and Mrs. Koch were not married at the time of the automobile purchase, they were nonetheless residing together and had been doing so for some time. Thus, it was clear to debtor and Mrs. Koch that the $230.00 per month car payment would become a household expense. It is difficult for the court to sympathize with the debtor's financial condition when he voluntarily incurred an additional $230.00 per month in expenses after filing a chapter 7 bankruptcy petition. Even if the purchase of a car were necessary, a less expensive car would have been advisable. Debtor therefore fails to meet the requirements of the "good faith" test.

■ Again assuming, *arguendo*, that debtor has met his burden of proof under

the "mechanical" test, the court may still deny discharge of a debt on the basis of 'undue hardship' if the debtor's attempt to discharge is the kind of abuse Congress intended to prevent by enacting § 523(a)(8)(B). *In re Johnson*, 5 BCD at 542. Debtor's education loans guaranteed by PHEAA, Temple, Loyola, and the Commission total $47,654.46. This amount represents 43.6% of debtor's total indebtedness. Including the nondischargeable HEAL debt, education loans represent 98.39% of debtor's total indebtedness. The court infers from this that debtor's motivation in filing this petition in bankruptcy was to discharge these education loans. This is undoubtedly the type of abuse which Congress sought to prevent.

PHEAA exists in order to provide worthy individuals with an opportunity to obtain an education which they would otherwise be unable to afford. The idea behind such assistance is to offer the individual a higher standard of living than he or she would be able to obtain without it. If those individuals, so assisted, do not make remuneration for this service, the funds may not be available to lend to another individual, who is equally in need of such assistance. The system is self-perpetuating. If it is made too easy to discharge this obligation, the funds will eventually cease to benefit those who need it most.

*Matter of Marion*, 61 B.R. at 818. The funds are revolving and repayment replenishes the system. It would indeed be tragic if another worthy candidate were unable to obtain the funds necessary for an education because education loans were easily discharged in bankruptcy.

The loans guaranteed by PHEAA, Temple, Loyola, and the Commission also enhanced debtor's earning capacity. *Matter of Coleman*, 98 B.R. at 449. Without his biology degree, debtor would not have gained his current employment. Without loans guaranteed by PHEAA, debtor would not have earned the biology degree. In addition, the loans guaranteed by PHEAA, Temple, Loyola, and the Commission provided debtor with a background in dentistry. The potential exists to use this dental background to secure additional employment as a dental lab technician or other dental-related position. The loans guaranteed by the above institutions therefore were of a benefit to debtor. Debtor, though, seeks to reap those benefits without paying for them. In fact, the court recalls no testimony indicating debtor made the first payment. This debtor wishes to benefit from the public largess and thereafter lighten his debt load. This debt is not an undue hardship in the legal sense but in fact is a substantial inconvenience to debtor's lifestyle.

Because debtor fails to meet the "mechanical" test, the "good faith" test, and the "policy" test, the court denies discharge of his education loans. Debtor has not shown that he falls within the "undue hardship" exception of § 523(a)(8)(B).

Debtor's education loan debts guaranteed by PHEAA, Temple, Loyola, and the Commission are nondischargeable.